MITCHELL BUICK AND OLDSMOBILE SALES, INC., Plaintiff-Appellee, v. McHENRY SAVINGS BANK, Defendant-Appellant.

Second District   No. 2—91—1314

Opinion filed October 8, 1992.

Ronald E. Shadle and Paul M. Orenic, both of Cappetta & Shadle, of Oakbrook Terrace, for appellant.

Michael F. Kukla, of Michael F. Kukla, Ltd., of Crystal Lake, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

Defendant, McHenry Savings Bank (McHenry), appeals the judgment of the circuit court for $10,000 in favor of plaintiff, Mitchell Buick & Oldsmobile Sales, Inc. The parties agreed to vary the terms of the Uniform Commercial Code—Bank Deposits and Collections (Ill. Rev. Stat. 1989, ch. 26, par. 4—101 *et seq.*) when McHenry agreed to hold a check for payment rather than dishonor the check immediately. The issue on appeal is whether McHenry breached that agreement by refusing to pay plaintiff's check when the drawer deposited

other checks into the account irrespective of whether the checks were ever collected.

At the trial, John A. Mitchell, president of plaintiff, testified that on July 10, 1989, Roger Little, as the owner of Masterson Motors, drew plaintiff a $10,000 check. According to the complaint, Masterson drew the check in return for the sale of plaintiff's used cars. Mitchell called Bud Adams at McHenry, where Masterson kept its account, to determine if the check was good. Adams told him that the check was not good. Mitchell asked if he could present the check to be held for collection and if there would be any drafts in front of plaintiff's check. Adams told Mitchell plaintiff's check would be in first place if it was presented immediately. Mitchell did not deposit the check with plaintiff's own bank but sent an employee to present it to McHenry. Mitchell testified that Adams told him that as soon as deposits added up to $10,000, the check would be paid. In return for holding the check for collection, plaintiff paid $7. The bank typed a receipt on a slip of paper labelled "COLLECTION ON [account number] PAYABLE TO MITCHELL BUICK & OLDSMOBILE SALES, INC." Mitchell repeated that Adams said that as soon as the deposits would equal the amount of the check it would be paid. The bank did not tell him that anyone would be paid ahead of plaintiff.

Mitchell then called Little and told him the check was not good. Little said that he would deposit over $50,000 in third-party checks into his account that afternoon. Little stopped at plaintiff's business on the way to the bank and showed Mitchell the checks. Later that afternoon, Mitchell called McHenry, and someone told him that the deposit had not yet been recorded. On July 24, McHenry returned the $10,000 check and a $7 refund. Mitchell called McHenry, and someone told him that the check was returned because Masterson's account was closed.

On cross-examination, Mitchell said that Adams' "exact words" were: "if Masterson Motors would deposit ten thousand or over, they would pay the check"; Adams did not say anything regarding whether the funds were actually collected.

Plaintiff called Brian T. Nash as its next witness. He was the manager of McHenry's checking department. McHenry's records showed a deposit of $53,262.54 into the Masterson Motors account on July 10, and this created an initial balance of $64,341.60. That day, the bank also charged the account $16,000 for a check which Little had drawn against the account for cash on June 16. McHenry had paid him $16,000, but the Federal Reserve Bank had returned the item as there were insufficient funds to cover that amount. McHenry

also charged the account $20,000, representing another check, deposited June 15, that was returned for insufficient funds. These debits left a balance of $28,341.60.

McHenry also called Nash to testify; McHenry no longer employed Adams. McHenry collected no funds on the Masterson account after July 10, 1989; the deposited checks bounced. On July 10, McHenry did not make any payments to anyone. The $16,000 item posted on July 10 was just a journal entry of an item that was paid a month earlier. The $20,000 debit reflected the return of an insufficiently funded check previously deposited. McHenry's records also showed that Masterson's account had a nominal $11,079.06 balance prior to July 10, when Adams told Mitchell there were no funds to pay the $10,000 check.

Nash attempted to testify with respect to the standard practice in accepting checks for collection, but plaintiff objected to the relevance of the testimony. Plaintiff contended that the standard practice was not relevant to the terms of the contract to which Mitchell had testified. The court sustained the objection because Adams could have deviated from the scope of his authority or from the standard practice by agreeing to some other kind of contract for collection of an item. However, the court permitted McHenry to make an offer of proof. Nash testified that the practice of McHenry was to pay only on collected funds, not deposited funds, when paying an item held for collection. McHenry did not pay the $10,000 check on July 10 despite the nominal $11,079.06 balance because that balance did not represent collected funds. Nash was not aware of any agreement ever made by McHenry of an agreement to pay on mere deposited funds.

The court entered judgment for plaintiff. The judge referred to his own experience that his bank as a courtesy permits him to write checks the day he deposits his State payroll check. The court noted that Mitchell's testimony was uncontroverted and found that McHenry should have paid the check.

The parties have addressed numerous issues arising from the above facts, and both counsel have done a commendable job in preparing their briefs. Although all the issues are interrelated because they all involve the proper interpretation of the parties' contract, McHenry makes the following arguments: (1) the terms of the Uniform Commercial Code were not varied by an agreement of the parties; (2) as a collecting bank, McHenry was the agent for plaintiff and did not become liable to it; (3) McHenry did not pay any other parties' checks before plaintiff's; (4) the judgment is against the manifest weight of

the evidence; and (5) the trial court erred in refusing to consider the evidence of the ordinary practices of holding checks for collection.

Article IV of the Uniform Commercial Code (Code) governs the actions of banks in depositing and collecting checks. The purposes of the Code are to simplify, clarify, and unify the law governing commercial transactions, to permit the expansion of commercial practices through custom, usage and agreement of the parties, and to make the law among the various States uniform. (Ill. Rev. Stat. 1989, ch. 26, par. 1—102(2).) However, the parties may vary the effect of the Code by agreement. Ill. Rev. Stat. 1989, ch. 26, par. 4—103(1).

A payor bank may charge against a customer's account any item which is otherwise properly payable even though the charge creates an overdraft (Ill. Rev. Stat. 1989, ch. 26, par. 4—401(1)), but a bank is not ordinarily liable to the payee of a check made by a drawer who has no funds on deposit to cover the check, even though the bank has previously honored overdrafts (Ill. Ann. Stat., ch. 26, par. 4—401, Illinois Code Comment, at 527 (Smith-Hurd 1963)). Subject to any right of the customer's bank to apply the credit to an obligation of the customer, a provisional credit given by a bank for an item deposited into an account becomes available for withdrawal as of right when the provisional settlement given by the collecting banks becomes final and the bank has had a reasonable time to learn the settlement is final. (Ill. Rev. Stat. 1989, ch. 26, par. 4—213(4)(a).) The provisional settlement becomes "final" when the third-party or collecting bank pays the item in cash, posts the check to the drawer's account or does some other action deemed to make the settlement irrevocable. (Ill. Rev. Stat. 1989, ch. 26, par. 4—213(1).) We note here that McHenry has cited section 4—213(6) (Ill. Rev. Stat. 1989, ch. 26, par. 4—213(6); see Ill. Rev. Stat. 1991, ch. 26, par. 4—215(f)), but that section applies only to the deposit of cash, which is final for withdrawal purposes the day following the deposit.

An application of these statutes to the facts before the court makes the meaning of these technical statutes clearer. We first note that "deposits" are not withdrawable; it is the credit resulting from the deposits which is withdrawable by the customer of the bank. A bank account is an intangible asset representing a bank's debt to its customer. When Masterson, the customer, deposited with McHenry the third-party checks for collection, McHenry gave a provisional credit to Masterson's account and sent the third-party checks to the Federal Reserve Bank for collection from the various banks from which those checks were drawn. McHenry received only a provisional settlement for those third-party funds, which could not become final

until those other banks honored the checks. However, no bank honored the checks to make the items "final." (Ill. Rev. Stat. 1989, ch. 26, par. 4—213(1).) Thus, the provisional credit in Masterson's account for the deposited third-party items never became final and never became withdrawable as of right. (Ill. Rev. Stat. 1989, ch. 26, par. 4—213(4)(a).) McHenry was under no obligation to pay a check drawn on Masterson's account when it contained insufficient funds. (Ill. Rev. Stat. 1989, ch. 26, par. 4—401.) Also, McHenry had the right to apply the credits created by the deposits to a previous obligation of Masterson, namely, the revoking of the provisional settlement made by a previously bounced third-party check, prior to Masterson's right to withdraw money against any finalized deposit. (Ill. Rev. Stat. 1989, ch. 26, pars. 4—213(4), 4—212(1).) In addition, in the absence of a contrary agreement, the payor bank may pay any item in any order convenient to the bank; no check has priority over another check. (Ill. Rev. Stat. 1989, ch. 26, par. 4—303(2).) This last section is irrelevant to this cause because there was no credit to pay any of Masterson's checks.

■ The record is sufficient to support a finding that the parties varied the bank's privilege to pay any item without priority because McHenry agreed to pay plaintiff's check before any other checks written by Masterson. The record is also sufficient to support a finding that the parties modified McHenry's obligation to provide timely notice of dishonor of plaintiff's check (Ill. Rev. Stat. 1989, ch. 26, pars. 4—301, 3—506); instead, McHenry was to hold the check until a condition was met. The parties dispute what that condition was. McHenry contends that the agreement was to hold the check until the deposit became final or sufficient funds were collected to pay the check. Plaintiff contends that the agreement was to hold the check until the drawer merely deposited an amount equal to the tenor of the check.

The evidence underlying the terms of the oral agreement is in controversy. Mitchell recollected from his short telephone call that Adams told him that the $10,000 check would be paid when Masterson made deposits. This statement is belied by other evidence. If the parties meant uncollected, nonfinal deposits, then Adams would not have told Mitchell the check was not good when McHenry was holding an $11,000 provisional credit in Masterson's account. If Mitchell thought the check would be paid after the mere deposit, and he knew that Masterson was depositing the other checks that day, then he would have expected payment that day; instead, he did nothing while the bank tried to collect the Masterson deposits. In addition, the ordinary practice was relevant to determine the reliability of Mitchell's recollection and to explain the terms of the statements forming the alleged

agreement. The trial court erred by accepting only one party's testimony regarding the terms of the oral agreement and by excluding any evidence contrary to that version. The trial court deemed the terms of the oral contract proved without considering all the evidence. The cases which plaintiff cites refer to extrinsic evidence contradicting written terms, and those cases are not relevant to the determination of what comprised the terms of an oral agreement.

Even if Adams had said that McHenry would pay the check if Masterson made deposits, the contract would have to include the provisions of the Code implying "final" deposits. No reasonable person on hearing the objective manifestations of the term "deposits" in the offer or acceptance could infer that a check would be paid on uncollected funds. The term "deposits," as used by the parties, was ambiguous and vague and could have included deposits of cash, government checks, or cashier's or certified checks; these items would provide credit available for withdrawals the next day (Ill. Rev. Stat. 1989, ch. 26, par. 4–213(5); 12 U.S.C.A. §4002 (West 1989)). Plaintiff should have known the deposits could have included checks of a lesser quality, including nonlocal checks, two-party checks, stolen checks, forged checks, insufficiently funded checks or checks written with disappearing ink. The term "deposits" does not distinguish between direct deposits, wire deposits, branch office deposits, automatic-teller-machine deposits or nonproprietary-automatic-teller-machine deposits. Thus, plaintiff's construction of the terms of the alleged agreement is manifestly unreasonable since plaintiff did not specify what might be deposited. Plaintiff unreasonably assumed, contrary to law, that the credit obtained from depositing third-party checks was the same as the credit obtained from depositing cash or cash equivalents. Even if we accept Mitchell's recollection of the exact words, "if Masterson Motors would deposit ten thousand or over," the court must infer of what units 10,000 are deposited. We can infer dollars, but Masterson did not deposit dollars; it deposited negotiable instruments, which do not create credit withdrawable as of right until made final. In interpreting a contract, a court will seek a reasonable interpretation of the terms of the contract. (*Ebrahim v. Checker Taxi Co.* (1984), 128 Ill. App. 3d 906, 907.) Plaintiff's interpretation is unreasonable, and we must reverse the judgment.

Moreover, there is no evidence that the parties intended to vary the terms of the Code regarding when the deposits would be withdrawable as of right, or that plaintiff sought to vary the term of Masterson's contract with McHenry. Instead, the only reasonable interpretation of the agreement is that, in consideration of a $7 fee, McHenry

would hold, rather than return and dishonor, plaintiff's check until such time as McHenry collected sufficient funds to make the deposits withdrawable by right.

In addition, plaintiff's argument that the terms of the Code should not apply to the contract unless specifically incorporated is patently unreasonable. This nation handles over 50 billion checks annually (Ill. Ann. Stat., ch. 26, par. 4—101, Uniform Commercial Code Comment, at 155 (West Supp. 1992)), and few parties, depositors, endorsers or drawers to these checks actually refer to the Code when handling a check; yet the precise instructions of the Code are followed when the checks are deposited, collected and paid. Plaintiff's own act of endorsing the check resulted in a myriad of consequences which cannot be understood without reference to the commercial paper laws. If plaintiff's check had been stolen or paid over a forged endorsement, plaintiff would be the first party to demand redress under the Code even though it made no express contract with the bank. While a court will not imply factual conditions which the parties failed to express in a contract, a court cannot construe a contract outside the legal conditions underlying a transaction. (*McMahon v. Chicago Mercantile Exchange* (1991), 221 Ill. App. 3d 935, 945.) The existing laws and statutes become implied terms of the contract as a matter of law. 221 Ill. App. 3d at 945.

McHenry is correct when it says that the Code applies because the agreement to hold the check for collection rather than to immediately dishonor it establishes that, at least, McHenry believed the oral agreement was subject to the Code and either there was never a meeting of the minds or the contract needs to be interpreted under the Code to bind McHenry, if at all.

Plaintiff also claims that McHenry had a reasonable expectation that McHenry would pay its item in spite of the overdraft since the evidence showed McHenry had honored such insufficiently funded items in the past. However, the evidence does not show plaintiff had knowledge of Masterson's prior overdraft, and, therefore, plaintiff could not have such an expectation. Even if plaintiff had an expectation, it was unreasonable. Ill. Ann. Stat., ch. 26, par. 4—401, Illinois Code Comment, at 527 (Smith-Hurd 1963).

For the above reasons, the judgment of the circuit court of McHenry County is reversed.

Reversed.

WOODWARD and McLAREN, JJ., concur.