HAROLD T. WELSH, Plaintiff-Appellant, v. COMMONWEALTH CREDIT UNION, Defendant-Appellee.

Third District   No. 3—92—0855

Opinion filed August 10, 1993.

Lawrence G. Gallagher, of D'Ancona & Pflaum, of Chicago (Jeffrey H. Bergman, of counsel), for appellant.

Blanke, Norden, Barmann, Kramer & Bohlen, P.C., of Kankakee (Christopher W. Bohlen, of counsel), for appellee.

JUSTICE BARRY delivered the opinion of the court:

Harold T. Welsh, plaintiff, appeals from summary judgment in favor of defendant Commonwealth Credit Union (CCU) in his suit to recover damages for breach of his employment contract. Welsh contends that CCU breached his contract by reducing his salary in April of 1989, by terminating his employment in January of 1990 without cause, and by terminating his employment by less than three-fourths vote of the members of the board of directors. We reverse.

Welsh was first employed as president of CCU in January of 1968. In October of 1971 the board of directors of CCU adopted a policy which provided that the board may terminate the employment of the

president only with three-fourths of the board voting in favor of termination. According to Welsh's affidavit, he was present at the meeting when this policy was adopted, and he was later given a personal copy of the policy by the board. At the time this policy was adopted, Welsh was employed under a three-year contract which began January 26, 1971, and the policy was published annually thereafter in the policy manual of CCU.

In 1974 CCU and Welsh entered into a new three-year contract which provided that Welsh would receive a minimum salary of $24,000 per year. Paragraph 5 also provided:

"This contract may be and shall be automatically renewed without the necessity of redrawing the contract for successive one year periods after the 26th day of January, 1977. However, the terms of this contract shall be reviewed at least annually to determine adequacy or inadequacy under prevailing economic conditions and salary increases or additional fringe benefits may be validly granted to the Employee by the Corporation's Board of Directors at any time provided that such increases or additional benefits be shown in the minutes of a regular or special meeting of the Board of Directors."

Paragraph 8 of the contract contained the following:

"This employment agreement cannot be terminated by the Corporation except for Employee's (a) fraud or criminal act in the performance of his duties; (b) breach of his agreement to devote full time to the corporation's business during its open hours; (c) acts or conduct of a nature substantially detrimental to the reputation and conduct of the corporation's business; (d) mental or physical incapability to normally and capably carry out his duties as determined by a competent licensed medical doctor. If this contract be terminated for any such reasons, such termination shall be effective only with five (5) business days prior written notice to the Employee of the effective date. On termination for any such cause, the Employee shall be entitled to all accrued vacation pay; and if such termination is pursuant to parts 'c' or 'd,' an additional sixty (60) days salary or salary to the end of the then contract term, whichever is the lesser, shall be paid."

Welsh received annual salary increases until 1988, by which time he was earning $91,730 per year. His salary was not increased for 1988 or 1989, and at a special meeting of the board of directors on April 24, 1989, the board approved a recommendation of its wage and salary committee that Welsh's salary be reduced to $60,000 per year,

effective May 1, 1989. The board also approved an incentive plan that would entitle Welsh to a maximum incentive compensation equal to 20% of his base salary ($12,000) if he met certain specified goals relating to capital and asset growth, delinquency, solvency and loan growth.

On September 11, 1989, the board of directors of CCU met to consider Welsh's employment contract. Nine members were present. Five voted in favor of a motion not to renew the contract. The motion also included giving Welsh an opportunity to resign and offering severance pay. Three members voted against the motion, and one abstained. The minutes of the meeting set forth specific reasons for nonrenewal, including inability of the Board and management to work together, failure to solve problems identified in a 1987 review by the National Credit Union Administration, and a reference to section 8(c) of Welsh's contract.

In a letter from the chairperson of the board of directors dated October 27, 1989, Welsh was advised that the board had "approved a motion to not renew your employment contract as Manager for the year beginning January 26, 1990." The letter stated that Welsh had been asked to resign and had not done so. The termination letter also stated:

> "The contract is being terminated in accordance with Section 8, Letter C, 'acts or conduct of a nature substantially detrimental to the reputation and conduct of the corporation's business.'
>
> Your employment contract will be terminated on January 26, 1990; however, your actual employment will cease at the end of the work day, November 24, 1989. You will receive 60 days additional salary, as stipulated in Section 8 of the contract."

Welsh's first amended complaint alleges in count I that the reduction of his salary to $60,000 was a breach of paragraph 5 of his employment contract, in count II that termination was without cause in violation of paragraph 8 of the contract, and in count III that termination was by less than three-fourths vote in violation of the "Termination Policy" adopted by the board. Not involved in this appeal was count IV, relating to unpaid vacation time. The court's decision is recorded in the following docket entry:

> "As to Count I, the contract that the plaintiff sues on allows the defendant to terminate it so there can be no breach by defendant when it did what the contract allowed. In Count II, the plaintiff claims a contract for life. The agreement by its terms clearly implies that [it] can be terminated without cause

at the end of any one-year term. As to Count III, the provisions of the contract are binding as opposed to the policy manual. The court finds no questions of fact to be decided. As a matter of law, judgment should be entered in favor of the defendant and against the plaintiff on Counts I, II and III."

■ Although summary judgment is to be encouraged in the interest of prompt disposition of litigation, the right to summary judgment must be clear beyond question, and the reviewing court must reverse an order granting summary judgment if there exists a question of material fact or if the judgment for the movant was incorrect as a matter of law. (*Town of Avon v. Geary* (1991), 223 Ill. App. 3d 294, 585 N.E.2d 194.) Thus, the granting of a motion for summary judgment is not discretionary, and the proper standard of review is *de novo*. (*Town of Avon v. Geary*, 223 Ill. App. 3d 294, 585 N.E.2d 194.) Furthermore, the court must construe the pleadings, depositions, affidavits, and admissions strictly against the movant and liberally in favor of the opponent. *Mitchell v. Jewel Food Stores* (1991), 142 Ill. 2d 152, 568 N.E.2d 827.

First, we consider Welsh's contention that the trial court erred in ruling that the contract allowed CCU to terminate his employment without cause at the end of any one-year term and that no breach of contract was involved when CCU did what the contract allowed. Obviously, the trial court adopted the view advanced by CCU that the board of directors voted not to renew Welsh's contract after its annual expiration on January 26, 1990, and that under paragraph 5 of the employment contract, nonrenewal without cause was permissible.

When confronted with a dispute over contract interpretation in the context of a summary judgment order, this court has said:

"Construing the language employed in a contract is a matter of law appropriate for summary judgment [citations], unless the contract is ambiguous [citations]. *** A contract is ambiguous if it is reasonably susceptible to more than one meaning [citation], but an ambiguity is not created merely because the parties disagree [citations]." *People ex rel. Burris v. Memorial Consultants, Inc.* (1992), 224 Ill. App. 3d 653, 656, 587 N.E.2d 34.

■ CCU's interpretation ignores the inherent ambiguity contained in paragraph 5: "This contract may be and shall be automatically renewed *** for successive one year periods." The ambiguity arises because "may" is considered permissive while "shall" is mandatory when interpreting private contracts. (*Professional Executive Center v. La Salle National Bank* (1991), 211 Ill. App. 3d 368, 379,

570 N.E.2d 366, 373.) None of the language in a contract can be ignored as mere surplusage. (*In re Schwass* (1984), 126 Ill. App. 3d 512, 467 N.E.2d 957.) The quoted language can be reasonably interpreted to mean that Welsh's employment contract shall be renewed annually as long as no cause for termination exists as defined in paragraph 8. Another reasonable interpretation would be that the contract may be renewed unless the CCU elects to review any of the terms of the contract, including duration and compensation. Obviously these two interpretations are contradictory. Hence, we are convinced that paragraph 5 is ambiguous and that summary judgment on count II was not proper. By so ruling, we are not deciding that Welsh could have a "contract for life" since, under either reasonable interpretation, conditions could exist which would result in nonrenewal.

█ In addition, the trial court erred in ruling that there are no questions of fact. The most obvious factual question is whether the board intended to terminate Welsh's contract for cause under paragraph 8(c) or whether the board intended to give notice of nonrenewal of his contract. Both the board minutes and the letter from the board chairperson to Welsh make reference to both nonrenewal and to termination pursuant to paragraph 8(c). The notification letter states that Welsh's employment will not be renewed beginning January 26, 1990, thus indicating that the board was acting under paragraph 5, but the letter also states that his "actual employment" will cease on November 24, 1989, and that he will receive 60 days' additional salary as provided in paragraph 8. These conflicting statements present a factual issue which also renders summary judgment on count II erroneous.

Welsh also contends that the trial court erred in ruling that the termination policy contained in the corporation's policy manual was not enforceable and, therefore, that Welsh's employment could be terminated by vote of less than three-fourths of the members of the board, as was the case here. We agree with Welsh that the controlling decision is *Duldulao v. St. Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 490, 505 N.E.2d 314, 318, where the supreme court clearly stated the circumstances under which an employer's policy statement creates enforceable contractual rights in the employee:

> "First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by com-

mencing or continuing to work after learning of the policy statement. When these conditions are present, then the employee's continued work constitutes consideration for the promises contained in the statement, and under traditional principles a valid contract is formed."

■ In the case before us, CCU has not disputed Welsh's affidavit stating that the board of directors gave him a written copy of the termination policy several days after it was adopted, and that it was published annually in the section of the CCU policy manual titled "Personnel Policies." This policy applied only to the president of the corporation and contained a clear promise that his employment would be terminated only with three-fourths of the board of directors voting in favor of termination. His continued work constituted consideration for the promise contained in the policy, and a valid contract exists. Where the express promise is contained in an individually negotiated employment relationship, the principles announced in *Duldulao* have been held to be even more apt. *Price v. Highland Community Bank* (N.D. Ill. 1989), 722 F. Supp. 454.

CCU argues that the termination policy was not a part of his employment contract because he had a separate written contract which did not include the termination policy. As we indicated above, the termination policy was adopted by the board of directors in October of 1971 while Welsh was employed under a three-year contract. This corporate policy was republished every year thereafter and must be considered to supplement Welsh's written employment contract. We hold that summary judgment as to count III was erroneous. CCU's termination of Welsh's employment by an affirmative vote of only five of the nine Board members was, as a matter of law, insufficient.

■ The final issue is whether Welsh's employment contract permitted a reduction in his annual salary. We can find nothing in the record on appeal to indicate the basis for the entry of summary judgment in favor of CCU on this issue. Welsh contends that paragraph 5 provides for an annual review of his salary and benefits and, if prevailing economic conditions warrant, expressly allows an increase in his compensation. He argues that, by implication, reductions in compensation are not authorized. CCU, on the other hand, argues that the provision of a minimum salary of $24,000 and the failure to exclude reductions must mean that Welsh's salary could be either increased or decreased in accordance with prevailing economic conditions, but not decreased below the minimum. We conclude that this provision of the contract is subject to two reasonable interpretations

and, therefore, is ambiguous. Summary judgment was wrongly entered as to count I as well as counts II and III.

For the reasons stated, we reverse the judgment of the circuit court of Kankakee County and remand this cause for further proceedings.

Reversed and remanded.

SLATER and BRESLIN, JJ., concur.