P.R.S. INTERNATIONAL, INC., Plaintiff-Appellant, v. SHRED PAX CORPORATION, Defendant-Appellee (One Three Six, Inc., *et al.*, Defendants).—P.R.S. INTERNATIONAL, INC., Appellant, v. SHRED PAX CORPORATION, Appellee.

Third District    Nos. 3—97—0227, 3—97—0666 cons.

Opinion filed October 31, 1997.

Joseph B. Platt, of Mount Prospect, for appellant.

Brian W. Lewis (argued), Michael Dockterman, and David M. Simon, all of Wildman, Harrold, Allen & Dixon, of Chicago, for appellee.

JUSTICE BRESLIN delivered the opinion of the court:

In this action for breach of a contract for the purchase of machinery we are asked to determine whether plaintiff P.R.S. International, Inc.'s (PRS) failure to respond to defendant Shred Pax Corporation's (Shred Pax) request to admit facts properly resulted in judicial admissions which barred PRS's claims. The trial court ruled that the failure to respond to Shred Pax's request to admit caused the facts to be deemed admitted. The court subsequently granted Shred Pax's motion for summary judgment, finding that the admissions precluded PRS's action and that the evidence also demonstrated that it had repudiated the agreement. The court then awarded Shred Pax $39,296.25 on its counterclaim against PRS for breach of contract. On appeal, PRS contends that the court erred when it awarded Shred Pax summary judgment (No. 3—97—0227) and resulting damages (No. 3—97—0666). Although we hold that the trial court properly denied PRS leave to serve its response to Shred Pax, we hold that the trial court could not consider disputed ultimate facts and legal conclusions included in the request to admit and that summary judgment was inappropriate. Accordingly, we reverse and remand Nos. 3—97—0227 and 3—97—0666.

## FACTS

In April 1990, PRS contracted with Shred Pax to purchase a pyrolysis machine, shredding machines, and equipment related to their operation. The pyrolysis machine was to transform tires, which had been shredded by the shredding machines, into carbon black, a substance used when reinforcing tires as well as in paint, printing ink, carbon paper and electric resistors. Shred Pax was to deliver "[o]ne pyrolysis system, including shredders," and related equipment and install it at a site in Plymouth, Florida, approximately 8 to 10 months after the contract was entered. PRS contends that the date of delivery was approximately February 18, 1991. The total contract price was $898,200. Following a down payment of $269,460, PRS was to make seven monthly payments of $78,592.50. A payment of $39,296.25 would follow in the eighth month and "$39,296.25 net 30 after approval of [the] shredding system." All the payments were made except for the final payment of $39,296.25.

In entering the contract for the machinery, PRS intended to create an operation to process a minimum of 5,000 rubber tires a day into oil and carbon black. Unfortunately, although the shredding components and other equipment were delivered two months after

the contract was entered, PRS never received the pyrolysis machine from Shed Pax. Its operation, which was eventually located in South Beloit, Illinois, rather than Florida, failed in 1993. PRS claims that the operation's demise was a direct result of Shred Pax's failure to deliver the pyrolysis machine, which was an integral component to the business of reducing rubber tires to oil and carbon black.

In November 1991, three PRS representatives went to Shred Pax's plant in Wood Dale, Illinois, to discuss matters related to the pyrolysis machine with Shred Pax's president. They claimed that the machine was not visible, except for a few parts, and that the president of Shred Pax refused to disclose who was manufacturing the machine. PRS claimed that this was part of a fraudulent course of conduct by Shred Pax, which PRS claimed had never built the machine.

During that period of time, PRS initiated discussions regarding the potential sale of the pyrolysis machine. In correspondence, PRS stated that Shred Pax was in a superior position to sell the machine since it was in the business of selling such products and could easily communicate with the desired market. By 1993, all cooperation, if any ever existed, ended. Eventually in a letter demonstrating his personal frustration with the affair, PRS's attorney, and at that time the principal shareholder, wrote a letter to Shred Pax informing it that the "best avenue" was for Shred Pax to sell the machine and that it was his "desire to be completely disassociated with anything to do with tire shredding or burning."

In 1995, PRS filed suit claiming, among other things, that Shred Pax breached the contract when it failed to deliver the pyrolysis system in 1991. Shred Pax denied the material allegations of the complaint and stated that the system was not delivered because PRS repudiated and breached the contract. Early in the discovery process Shred Pax submitted a set of interrogatories and requests to admit to PRS. PRS did not reply to the requests within the statutory period of 28 days. Its response to the interrogatories was delivered four months after they were submitted. When the request to admit facts remained unanswered for 10 months, Shred Pax filed a motion to have the requested facts deemed admitted. PRS still had not filed a response after 15 months when the court ruled on Shred Pax's motion. The court denied PRS leave to serve its response and stated that, absent good cause, Supreme Court Rules 216 and 183 (134 Ill. 2d Rs. 183, 216) mandated that the facts be admitted. Since the court found that no good explanation was given for the delay, it denied PRS leave and ordered the facts be admitted.

Included in the request to admit were requests to admit the

genuineness of documents, as well as the following relevant statements:

"6. Shred Pax delivered to PRS the shredding system and other equipment required by the contract other than the pyrolysis system.

7. PRS accepted, approved, and used the shredding system and other equipment delivered by Shred Pax.

8. PRS failed to pay Shred Pax $898,200.

9. Prior to February, 1991, PRS ceased doing business at the Florida location ***.

\* \* \*

13. PRS never obtained all of the permits required by applicable federal, state, and municipal law for delivery, installation, or operation of the pyrolysis system at any location in the United States.

\* \* \*

17. PRS never requested that Shred Pax deliver the pyrolysis system to PRS at a particular location on a particular date.

18. PRS refused to take delivery of the pyrolysis system.

19. PRS requested that Shred Pax sell the pyrolysis system to someone else.

20. Shred Pax had the pyrolysis system ready for delivery in February, 1991, and thereafter.

21. PRS repudiated the parties' contract by refusing to take delivery of the pyrolysis system or by requesting that Shred Pax sell the pyrolysis system to someone else.

22. PRS breached the parties' contract by (1) repudiating the parties' contract, by refusing to take delivery of the pyrolysis system or by requesting that Shred Pax sell the pyrolysis system to someone else, (2) by failing to pay Shred Pax $39,296.25 when due, or (3) failing to obtain all of the permits required by applicable federal, state, and municipal law for delivery, installation, or operation of the pyrolysis system at any location in the United States."

Based on the admissions and various correspondence from PRS officials, Shred Pax moved for summary judgment claiming that PRS was in breach of contract and that it had also repudiated the agreement. In addition to the admissions and correspondence allegedly demonstrating a repudiation, Shred Pax included an affidavit from an expert in the field of air pollution permit regulations who stated that air pollution regulations required PRS to acquire a construction permit before installing the pyrolysis system.

Despite the fact that there was substantial evidence that the pyrolysis system was never built or delivered, the court found that the

admissions resulting from the failure to respond to the request to admit precluded PRS's claim for breach and it awarded Shred Pax summary judgment. The court also noted that the evidence demonstrated a repudiation on PRS's part. Shred Pax was later awarded $39,296.25 in damages. PRS appeals from the decision awarding summary judgment (No. 3—97—0227) and the award of damages (No. 3—97—0666).

## ANALYSIS

### I. DENIAL OF LEAVE TO SERVE RESPONSE

The first issue on appeal is whether the court abused its discretion when it denied PRS leave to serve Shred Pax with its response to the request to admit.

■ Supreme Court Rule 216(c) provides that unless the party to whom a request to admit was directed responds within 28 days, the facts of the document are deemed admitted. 134 Ill. 2d R. 216(c); *Schwalb v. Wood*, 288 Ill. App. 3d 498, 680 N.E.2d 773 (1997). Supreme Court Rule 183 provides an exception, however, and allows the court to extend the time for filing a pleading if the party demonstrates "good cause." 134 Ill. 2d R. 183; *Bright v. Dicke*, 166 Ill. 2d 204, 652 N.E.2d 275 (1995). Absence of prejudice to the opposing party is immaterial; it is a prerequisite that the responding party demonstrate good cause to obtain the relief granted by Rule 183. *Bright*, 166 Ill. 2d at 209, 652 N.E.2d at 277. Absent an abuse of discretion, this court will not disturb the trial court's decision to deny a motion for extension of time under Rule 183. *Schwalb*, 288 Ill. App. 3d at 501, 680 N.E.2d at 776.

PRS asserts that the court abused its discretion because the court's ruling acts as a punishment. It claims that the failure to respond was not deliberate and that denial of leave to serve its response was an abuse of discretion under Supreme Court Rule 219(c) (166 Ill. 2d R. 219(c)).

■ PRS is mistaken when it argues that the court abused its discretion under Rule 219(c) since what occurred was the result of the operation of Rule 216(c). See *F.J. Pechman, Inc. v. Oldham*, 86 Ill. App. 3d 1018, 408 N.E.2d 487 (1980) (summary judgment based on judicial admission made under Rule 216(c) does not constitute a sanction imposed under Rule 219(c)). PRS ignores the fact that Rule 183 is specific in requiring a good cause showing for the delay before the court is granted any discretion. See *Bright*, 166 Ill. 2d at 209, 652 N.E.2d at 277. No explanation was given to the trial court for the delay. Accordingly, we hold that the court did not abuse its discretion when it denied PRS leave to serve its response.

## II. SUMMARY JUDGMENT

Having determined that the court did not abuse its discretion, we must consider whether summary judgment was appropriate in light of its decision.

■ Summary judgment should only be granted when the pleadings, depositions, admissions and affidavits on file show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1996); *Armstrong v. Washington*, 289 Ill. App. 3d 306, 682 N.E.2d 761 (1997). This court's review of an order granting summary judgment is *de novo*. *First of America Trust Co. v. First Illini Bancorp, Inc.*, 289 Ill. App. 3d 276, 681 N.E.2d 45 (1997).

■ Admissions resulting from a request to admit pursuant to Rule 216 are "tantamount" to judicial admissions and are taken as true. *Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.*, 169 Ill. 2d 110, 660 N.E.2d 863 (1995). The admissions are thus incontrovertible and have the effect of withdrawing the matter from contention. *People v. Mindham*, 253 Ill. App. 3d 792, 625 N.E.2d 835 (1993).

■ A request to admit facts is a discovery tool. *Bright*, 166 Ill. 2d at 208, 652 N.E.2d at 276. Parties utilizing Rule 216(c) are to avoid requesting admissions concerning conclusions or opinions of law (*People v. Mindham*, 253 Ill. App. 3d 792, 625 N.E.2d 835 (1993)) and controverted facts (*Sims v. City of Alton*, 172 Ill. App. 3d 694, 526 N.E.2d 931 (1988)), since the intent behind the rule was not to allow parties to ultimately prove their case through this procedure. *People v. Strasbaugh*, 194 Ill. App. 3d 1012, 551 N.E.2d 1095 (1990). There is disagreement, however, as to the effect of requesting a party to admit disputed ultimate facts—any contested facts needed to establish one's case or defense—when no objection is made.

In *Strasbaugh*, 194 Ill. App. 3d at 1017, 551 N.E.2d at 1099, the court found that certain requests to admit were improper and could not form the basis of a motion for summary judgment because they called for admissions of ultimate facts. The court reasoned that Rule 216 was developed to allow admissions to undisputed facts so that the opposing party did not have to prove what was uncontroverted and that it was not appropriate to prove one's case with requests to admit when "ultimate facts are fairly disputed." *Strasbaugh*, 194 Ill. App. 3d at 1017, 551 N.E.2d at 1099. Similarly in *Sims*, 172 Ill. App. 3d at 699, 526 N.E.2d at 935, the court held that permitting a party to obtain conclusions of law and ultimate facts, essentially conceding the entire case, was inconsistent with the purpose of Rule 216. Thus,

the court permitted a late response to counter the inappropriate requests.[1]

In *Mindham*, 253 Ill. App. 3d at 792, 625 N.E.2d at 841, however, the court concluded that while it may be true that the request to admit should not be used to request ultimate facts, whether a fact is ultimate may not be known at the time the request is submitted. Furthermore, the court noted that to avoid an admission, the opposing party can simply object pursuant to Rule 216. According to *Mindham*, 253 Ill. App. 3d at 792, 625 N.E.2d at 841, unopposed requests to admit facts, whether they relate to ultimate facts or not, are admitted and incontrovertible.

Shred Pax contends that the *Mindham* decision discusses the only remedy available to a respondent and that, absent an objection, all statements are admitted. Shred Pax argues that our supreme court's decision in *Bright v. Dicke*, 166 Ill. 2d 204, 652 N.E.2d 275 (1995), controls. In *Bright*, the court held that the failure to provide good cause for a failure to respond will result in admissions of the facts requested. However, the court did not address the issue of whether a trial court may appropriately consider controverted ultimate facts or conclusions in a subsequent motion for summary judgment when a request to admit has gone unanswered for no reasonable explanation.

■ In our opinion, the trial court may not consider controverted ultimate facts and legal conclusions just because a party has failed to respond within the 28-day statutory period. To permit a party to escape litigation in such a manner would thwart the purpose of Rule 216 and invite parties to include all kinds of information in their requests, no matter how hotly disputed, to see what they can get away with. This is a far cry from the purpose of the rule, which is to obviate the difficulty involved regarding proof of evidence that is incontrovertible. *Wintersteen v. National Cooperage & Woodenware Co.*, 361 Ill. 95, 197 N.E. 578 (1935). Accordingly, we hold that the trial court could not consider disputed ultimate facts and conclusions of law included in Shred Pax's request to admit when considering Shred Pax's motion for summary judgment.

Shred Pax argues that there are various bases upon which the

---

[1]In addition, the *Sims* court noted that the plaintiffs failed to show how they would be prejudiced by allowing the defendant leave to file a late response. We note that this issue is not relevant since the court in *Bright*, 166 Ill. 2d at 209, 652 N.E.2d at 277, held that prejudice is irrelevant and that the responding party bears the burden of demonstrating good cause before being allowed to respond.

trial court's judgment may be affirmed. We will consider each argument below.

1. Failure To Pay Installment of $39,296.25 When Due

Shred Pax contends that PRS admitted that it failed to pay the full contract price and that a breach occurred when it accepted the shredder system without paying the remaining installment within 30 days of acceptance. PRS does not dispute the fact that it did not pay. It argues that the contract did not call for the payment of the final installment until the pyrolysis machine was installed. Rather than being a dispute concerning ultimate facts or conclusions, this argument centers around an interpretation of the contract.

■ Interpreting the language of a contract is a matter of law appropriate for summary judgment unless the language is ambiguous. *Welsh v. Commonwealth Credit Union*, 249 Ill. App. 3d 719, 619 N.E.2d 181 (1993). When construing the language of the contract, the document must be read as a whole and all parts must be construed together. *Preski v. Warchol Construction Co.*, 111 Ill. App. 3d 641, 444 N.E.2d 1105 (1982). A contract is ambiguous if it is reasonably susceptible to more than one meaning. *People ex rel. Burris v. Memorial Consultants, Inc.*, 224 Ill. App. 3d 653, 587 N.E.2d 34 (1992).

■ The agreement stated that the parties were bargaining for the delivery of "[o]ne pyrolysis system, including shredders." Delivery of the pyrolysis system was to occur 8 to 10 months after the down payment. After seven monthly payments, a payment of $39,296.25 was to be made in "the eighth month and $39,296.25 net 30 after approval of [the] shredding system."

The use of the terms "pyrolysis system" and "shredding system" results in confusion, especially in light of the fact that the shredding system was delivered within two months of the time the contract was entered. Accordingly, we hold that the contract is ambiguous and that summary judgment would not be appropriate on this basis.

2. Repudiation of Contract

Shred Pax also insists that it is due summary judgment because PRS repudiated the contract. Shred Pax contends that summary judgment is proper because PRS admitted that it: (a) never requested that Shred Pax deliver the system to PRS at a particular location on a particular date; (b) refused to take delivery of the pyrolysis machine; (c) requested that Shred Pax sell the pyrolysis system to someone else; and (d) repudiated the contract by refusing to take delivery or by requesting that Shred Pax sell the machine.

■ Absent justification, a definite statement made by one party of

a contract to the other that it will not perform its contractual duties constitutes an anticipatory repudiation. *Builder's Concrete Co. v. Fred Faubel & Sons, Inc.*, 58 Ill. App. 3d 100, 373 N.E.2d 863 (1978). The party's manifestation must clearly and unequivocally be that it will not render the promised performance when it becomes due. *In re Marriage of Olsen*, 124 Ill. 2d 19, 528 N.E.2d 684 (1988).

(a) Failure To Request Delivery

█ The fact that PRS admitted that it did not request delivery is not an ultimate fact that the trial court need ignore since it is not apparent why it even amounts to a repudiation. Shred Pax has not explained its position. The contract does not say that PRS must request delivery; rather, the contract dictates that the system be delivered to the site in Florida. Since the site was not available, another place of delivery was needed. To argue that this amounted to a repudiation, however, is without merit since it does not evidence that PRS would otherwise reject delivery at its South Beloit site. Therefore, we reject this argument.

(b) Refusal To Take Delivery

█ Shred Pax next contends that PRS repudiated the contract when it refused to take delivery of the machine. Although a refusal to take delivery may amount to a repudiation (see *Great Western Sugar Co. v. World's Finest Chocolate, Inc.*, 169 Ill. App. 3d 949, 523 N.E.2d 1149 (1988)), Shred Pax's proof is based solely upon an admission acquired pursuant to the court's ruling. Whether the machine was delivered, however, was an ultimate fact that was disputed from the beginning of the case. Shred Pax improperly sought an admission concerning the machine's delivery and it should not be considered as an admission supporting its motion for summary judgment.

(c) Requests that Shred Pax Sell Machine

█ Shred Pax also asserts that a repudiation occurred when PRS officials requested that Shred Pax sell the pyrolysis machine. Discussions began in late November 1991 and continued through 1993, culminating in a letter from PRS's attorney and principal shareholder wherein he stated that it was his "desire to be completely disassociated with anything to do with tire shredding or burning."

This statement created an ambiguous implication that performance would not occur. However, it was not so definite that the trial court could rule that the language amounted to a repudiation as a matter of law. See *Truman L. Flatt & Sons Co. v. Schupf*, 271 Ill. App. 3d 983, 649 N.E.2d 990 (1995). Under the circumstances,

whether the requests that the machine be sold could amount to a repudiation well after delivery was due is a question of fact and was not appropriate for summary judgment.

(d) Admission of Repudiation

■ Shred Pax relies on PRS's admission made in paragraph 21 wherein it admitted that it repudiated the agreement by refusing to take delivery and by requesting that Shred Pax sell the machine. This statement is a legal conclusion and may not be considered by the trial court. Likewise, paragraph 22 (wherein PRS admits that it breached the contract by: repudiating it; failing to pay $39,296.25 when due; and failing to obtain the necessary permits for delivery and installation) is also a legal conclusion and may not be considered by the trial court when ruling on Shred Pax's motion.

3. Breach Resulting From Failure To Acquire Permits

Finally, Shred Pax argues that summary judgment was appropriate because PRS admitted that it had not acquired the necessary permits to install and operate the pyrolysis machine in compliance with air pollution regulations. Shred Pax asserts that the failure to obtain the permit resulted in a breach of contract because statutes and laws in existence at the time of contracting are considered part of the contract. PRS, to the contrary, has asserted that no special permit was required since the pyrolysis machine did not emit toxins at a level that would require a special construction permit.

■ Statutes and laws in existence at the time a contract is entered are considered part of the contract. *Braye v. Archer-Daniels-Midland Co.*, 175 Ill. 2d 201, 676 N.E.2d 1295 (1997). They are treated as implied terms to which the parties have agreed. *Mitchell Buick & Oldsmobile Sales, Inc. v. McHenry Savings Bank*, 235 Ill. App. 3d 978, 601 N.E.2d 1360 (1992).

■ Whether a special permit was required for the machine's installation is another issue central to the case and for which a request to admit was improper. Whether the law required a permit in this specific instance, rendering the permit an implied condition precedent, involves a question of fact that needs to be determined at trial.

## CONCLUSION

In conclusion, we hold that the trial court improperly awarded summary judgment to Shred Pax. Therefore, we reverse and remand for further proceedings.

968

For the foregoing reasons, the judgment of the circuit court of Du Page County is reversed and remanded.

Reversed and remanded.

LYTTON, P.J., and MICHELA, J., concur.