In re Bruce A. NISWONGER, Susan E. Niswonger, Debtors.

Samuel FRIEDLY, Barbara Friedly, Ashley Brown, Susan Brown, Plaintiffs,

v.

Bruce A. NISWONGER, Defendant.

Bankruptcy No. 3–89–00103.
Adv. Nos. 3–89–0097, 3–89–0098.

United States Bankruptcy Court, S.D. Ohio, W.D.

March 29, 1990.

V. Michael Brigner, Dayton, Ohio, for plaintiffs.

Bruce A. Niswonger, Lewisburg, Ohio, pro se.

Donald F. Harker, III, Dayton, Ohio, Trustee.

## DECISION ON ORDERS GRANTING PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT

THOMAS F. WALDRON, Bankruptcy Judge.

These related adversary proceedings, which arise under 28 U.S.C. Section 1334(b) in a case referred to this court by the Standing Order of Reference entered in this district on July 30, 1984, are determined to be core proceedings pursuant to 28 U.S.C. Section 157(b)(2)(A)—matters concerning the administration of the estate and (1)—determinations as to the dischargeability of particular debts. These related adversary proceedings are before the court on the plaintiffs' motions for summary judgment.

Debtors Bruce and Susan Niswonger filed a joint petition under Chapter 7 of the Bankruptcy Code on January 11, 1989. On April 17, 1989, the Plaintiffs, Samuel and Barbara Friedly (the Friedlys) and Ashley and Susan Brown (the Browns), all represented by the same attorney, filed two separate adversary proceedings (Friedly, Adv. No. 3–89–0097; Browns, Adv. No. 3–89–0098) seeking determinations that the debts due them from Bruce A. Niswonger, the debtor-defendant should be an exception to any discharge granted to the debtor. The Motions For Summary Judgment, seeking determinations that these debts should be nondischargeable pursuant to § 523(a)(2)(A), are factually similar, cite the same authorities and advance similar arguments. Accordingly, the court will determine both motions in a single decision applicable to both adversaries.

The defendant was initially represented by counsel, who filed various pleadings, including Motions to Dismiss and Answers, in both adversaries. (Docs. 3, 7, 10, Adv. 3–89–0097 and Docs. 3, 7, 10, Adv. 3–89–0098). Debtor's counsel subsequently filed a Motion To Withdraw As Counsel For The Defendant in each adversary (Doc. 11, Adv. 3–89–0097 and Doc. 11, Adv. 3–89–0098) citing a lack of cooperation by the defendant. After a hearing on this motion, attended by the defendant, the court granted the Motion To Withdraw and advised the

defendant of the importance of being represented by an attorney in these adversary proceedings. (Doc. 14, Adv. 3–89–0097 and Doc. 14, Adv. 3–89–0098). To date, no other attorney has entered an appearance on the debtors' behalf and he presently appears *pro se.*

The Plaintiffs then filed motions for summary judgment in each adversary. (Doc. 17, Adv. 3–89–0097 and Doc. 17, Adv. 3–89–0098). The defendant has not filed any response or requests for additional time to respond to the plaintiffs' motions.

The facts established in connection with the Summary Judgment Motions demonstrate that the debtor Bruce Niswonger, doing business as Consolidated Builders, entered into a contract with the Friedlys to build a house. On July 17, 1989, the defendant submitted an Affidavit to Milton Federal Savings and Loan Association (Milton Federal), the bank with which the Friedlys had a construction loan, stating that all subcontractors and materialmen had been paid in full and that the defendant was therefore entitled to receive thirty-one thousand, nine hundred and five dollars and eighty cents ($31,905.80) (Doc. 17, Exhibit 1, Adv. 3–89–0097). Milton issued a check in that amount and it was subsequently cashed by the defendant (Doc. 17, Exhibit 2, Adv. 3–89–0097); however, one of the materialmen, P.K. Brookville, Inc. (Brookville), that had supplied material to the debtor for use on the Friedlys' house, had not been paid. On November 15, 1987, Brookville filed and recorded a mechanics lien against the Friedlys' house. (Doc. 17 Exhibits 3 and 4, Adv. 3–89–0097).

The Friedlys also established that they paid Niswonger an additional five thousand dollars ($5,000.00) for the specific purpose of having certain drywall work on the same house. Niswonger hired Alan D. Mansfield to do the drywall work. Niswonger cashed the check (Doc. 17, Exhibit 5, Adv. 3–89–0097) but did not pay Mansfield. Mansfield, on August 18, 1988, recorded a lien against the Friedly's house. (Doc. 17, Exhibit 6, Adv. 3–89–0097). The Friedlys seek to have both these amounts, which total thirty-six thousand nine hundred and five dollars and eighty cents ($36,905.80), determined an exception to any discharge issued to the defendant.[1]

The Browns also contracted to have a house built by the defendant, doing business as Consolidated Builders, for one hundred and thirty-seven thousand dollars ($137,000.00). According to their Summary Judgment Motion, the Browns allege that Niswonger committed a number of fraudulent acts including converting funds to his own use and submitting fraudulent bills for payment by Milton Federal (also the lender for the Browns).

In a State Court criminal proceeding, Niswonger plead guilty to a Bill of Information charging him with grand theft of five thousand dollars ($5,000.00) in violation of Section 2913.02(A)(3) of the Ohio Revised Code and two counts of forgery in violation of Section 2913.31(A)(3) of the Ohio Revised Code in connection with his fraudulent activities arising out of the construction of the Browns' home. Niswonger was ordered to make restitution in the sum of eighteen thousand, five hundred and forty-nine dollars and seventy-six cents ($18,-549.76), fifteen thousand, one hundred and sixty-nine dollars and seventy-six cents ($15,169.76) of which is to be paid to the Browns. (Doc. 17, Exhibits 3 and 4, Adv. # 3–89–0098).

Both plaintiffs filed their motions for summary judgment on December 21, 1989. The debtor has not filed a response to either motion. Attached to each Motion is a copy of a request for admissions. Counsel for the plaintiffs states in his affidavit that he served the request for admissions on the defendant on or about November 1,

---

1. The court notes that the complaint in this case seeks to have a total indebtedness of one hundred and twenty thousand dollars ($120,000) determined nondischargeable, while the summary judgment motion seeks to have the sum of thirty-six thousand, nine hundred and five dollars and eighty cents ($36,905.80) determined nondischargeable. Similarly the Browns' complaint seeks to have a debt of fifty thousand dollars ($50,000.00) (Adv. # 3–89–0098) determined to be nondischargeable. However the Summary Judgment motion speaks in terms of fifteen thousand, one hundred and sixty-nine dollars and seventy-six cents debt ($15,169.76).

1989 and, as of December 20, 1989, had not received an answer. Plaintiffs now seek to have judgments entered in their favor on the basis that all the admissions requested are deemed true pursuant to Fed.R.Civ.P. 36(b).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In 1986, the Supreme Court reexamined the purpose and rationale of the summary judgment rule in three decisions. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); and *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The Sixth Circuit in *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir.1989) undertook an exhaustive analysis of summary judgment and a synthesis of these three Supreme Court decisions. The Sixth Circuit welcomed the " 'new era' in summary judgments dawned by virtue of the Court's opinions in these cases." *Id.* at 1476. The Sixth Circuit further stated:

> Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion. If, after a sufficient time for discovery, the opposing party is unable to demonstrate that he or she can do so under the *Liberty Lobby* criteria, summary judgment is appropriate. *Id.* at 1478.

In both adversaries the plaintiffs argue that the proceeding can be appropriately determined under the Summary Judgment Rule. Both plaintiffs argue that the court should deem the facts "conclusively established" pursuant to Fed.R.Civ.P. 36, by virtue of the defendant's failure to respond to the requests for admissions. In Adv. No. 3–89–0097, the plaintiffs requested twenty-four (24) separate admissions. In Adv. No. 3–89–0098, the plaintiffs requested ten (10) separate admissions. The defendant failed to respond to any request for admission in either adversary, nor did he request additional time in which to respond to any request for admissions in either adversary. (Doc. 17 in each adversary, affidavits of plaintiffs' attorney).

Fed.R.Civ.P. 36 states in pertinent part:

**(a) Request for Admission.** A party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of Rule 26(b) set forth in the request that relate to statements or opinions of fact or of the application of law to fact, including the genuineness of any documents described in the request. ....

Each matter of which an admission is requested shall be separately set forth. The matter is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter....

**(b) Effect of Admission.** Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission.

Fed.R.Civ.P. 56(c) specifies that "admissions on file" can be an appropriate basis for the entry of summary judgment. It is also settled that "[a]dmissions made under Rule 36, even default admissions can serve as the factual predicate for summary judgment. Rule 36(b) provides that a matter admitted is conclusively established." *U.S. v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987); *Rainbolt v. Johnson*, 669 F.2d 767, 768 (D.C.Cir.1981); *National Advertising Co., Inc. v. Dick*, 640 F.Supp. 1474, 1475 (S.D.Ind.1986); *Goodnow v. Adelman (In re Adelman)*, 90 B.R. 1012, 1015 (Bankr.D. S.D.1988). "The rule is designed to expedite litigation, and it permits the party se-

curing admissions to rely on their binding effect." *Rainbolt,* 669 F.2d at 768.

■ The scope of Rule 36(a) is quite broad and permissible requests include even "ultimate facts" or facts dispositive of a case, *Campbell v. Spectrum Automation Co.,* 601 F.2d 246, 253 (6th Cir.1979).

■ Based on the above discussion the court finds that the defendant's failure to answer or respond to the requests for admissions results in the admissions being conclusively established. Thus the relevant facts are undisputed and a decision on summary judgment is appropriate.

The court notes that summary judgment is not usually favored for determining actions based on fraud *Ernst v. Walton (In re Walton),* 103 B.R. 151, 156 (Bankr.S.D. Ohio 1989); however, as a result of admissions in each of these adversaries, there no longer remains any genuine issue as to any material facts. Additionally, in Adv. No. 3–89–0098 (Browns), the defendant entered a guilty plea in a criminal proceeding in the Montgomery County Court of Common Pleas.

### ADVERSARY NO. 3–89–0097, THE FRIEDLYS

■ The admissions establish that the defendant submitted an affidavit to Milton in which he certified that all the subcontractors and materialmen had been paid. The bank, relying on the defendant's representations, issued the defendant a check for $31,905.80. However, P.K. Brookville, Inc., which had supplied materials to the defendant in excess of $32,000.00 had not been paid, and Brookville subsequently filed a mechanics lien against the Friedlys' property. The admissions also establish that the defendant signed the affidavit with the intent to defraud the Friedlys.

The admissions further establish that the defendant converted to his own use five thousand dollars ($5,000.00) given to him for payment for the dry walling on the Friedlys' house. The debtor hired Mansfield to do the dry walling, but did not pay Mansfield, although the defendant did cash the check given to him by the Friedlys for that purpose. Mansfield also filed a mechanics lien against the Friedlys' property. Thus the admissions establish that the Friedlys incurred a loss of $36,905.80 as a result of the defendant's fraudulent activities. The court notes that independent of the default admissions, the exhibits and other documents including copies of the mechanics liens filed by Brookville and Mansfield, the false affidavits and the cancelled checks support the facts established in the admissions.

11 U.S.C. § 523(a)(2)(A) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

Thus, in order to establish a § 523(a)(2)(A) action the plaintiff bears the burden of proof of establishing by clear and convincing evidence that the defendant 1) made a representation; 2) that the defendant knew the representation to be false; 3) that it was made with the intent to deceive; 4) plaintiff reasonably relied on the representation and 5) that a loss was sustained as a result of the reliance. *Miami Citizens National Bank & Trust Co. v. Weitzel (In re Weitzel),* 85 B.R. 753, 755 (Bankr.N.D. Ohio 1988); *In re Phillips,* 804 F.2d 930, 932 (6th Cir.1986).

The admissions set out in detail facts which establish the necessary elements of the Friedlys' § 523(a)(2)(A) claim. Further, Admission # 16 in Adv. No. 3–89–0097 specifically states that the defendant signed the affidavit submitted to Milton with the intent to defraud the Friedlys. Similarly, with respect to the Mansfield claim, Admissions ## 21–23 state that the defendant cashed the $5,000 check with the intent to defraud the plaintiffs, since the debtor did not intend to use the funds for payment to Mansfield. Thus, based upon all of the evidence presented in Adversary No. 3–89–

0097, the court finds that the debt owed the Friedlys of $36,905.80 is an exception to the debtor's discharge. A judgment in favor of the plaintiffs against the defendant in the amount of thirty-six thousand, nine hundred five dollars and eighty cents ($36,-905.80) is simultaneously entered.

### ADV. NO. 3–89–0098, THE BROWNS

 The Browns also seek to have the debt owed to them determined nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). The admissions submitted by the Browns establish that the defendant pled guilty to grand theft and fraud involving construction of the Browns' home and the State Court ordered the debtor to make restitution of $15,169.76 to the plaintiffs. The Browns now seek to have that restitution debt held nondischargeable. Plaintiffs' admissions set out these facts in detail and are supported by copies of the various pleadings and orders of the State Court, including the restitution order. (*See also, Kelly v. Robinson* 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986))

The admissions, and exhibits clearly establish the necessary elements of the Browns' § 523(a)(2)(A) claim. Accordingly, this debt is determined to be an exception to the debtor's discharge. A judgment in favor of the plaintiffs against the defendant in the amount of fifteen thousand, one hundred sixty-nine dollars and seventy-six cents ($15,169.76) is simultaneously entered.

Orders in accordance with this decision are simultaneously entered and a copy of this decision will be filed in each adversary proceeding.

The court has entered an additional order in each adversary scheduling further hearings on the remaining issues in each proceeding.

SO ORDERED.