(No. 84438.—

P.R.S. INTERNATIONAL, INC., Appellee, v. SHRED PAX CORPORATION, Appellant.

*Opinion filed October 22, 1998.—Rehearing denied November 30, 1998.*

HARRISON, J., specially concurring.

Wildman, Harrold, Allen & Dixon, of Chicago (Michael Dockterman, Brian W. Lewis and David M. Simon, of counsel), for appellant.

John B. Platt, of Mt. Prospect, for appellee.

JUSTICE McMORROW delivered the opinion of the court:

This case involves the question of whether a party's failure to respond to a request for admission pursuant to Supreme Court Rule 216 (134 Ill. 2d R. 216) results in a judicial admission even where the requested admission relates to "ultimate facts" or to "legal conclusions." Defendant served requests for admissions on plaintiff, and plaintiff did not deny or object to the requests. Based on this failure to respond, defendant moved to have the requests be deemed admitted. The trial court granted that motion. Defendant then moved for summary judgment, and the trial court granted that motion. Plaintiff appealed, and the appellate court reversed. The appellate court found that certain of the requests were improper because they related to "ultimate facts"; that others were improper because they related to "legal conclusions"; and that the remaining requests, even if deemed admissions, did not support an award of summary judgment. 292 Ill. App. 3d 956. We reverse.

## BACKGROUND

The following facts are of record in the case at bar. On April 18, 1990, the parties to this appeal entered into a contract which provided that plaintiff, P.R.S. International, Inc. (PRS), would purchase from defendant, Shred

Pax Corporation (Shred Pax), "[o]ne pyrolysis system, including shredders and conveyers as a turnkey operation." The shredders would shred rubber tires, and the pyrolysis machine would burn the shredded tires, converting them to carbon black, which is a substance used in a variety of products. The contract provided that PRS was to make a down payment of $269,460, followed by seven monthly payments of $78,592.50 each, a payment of $39,296.25 in the eighth month, and a final payment of "$39,296.25 net 30 after approval of the shredding system."

Under the terms of the contract, Shred Pax was to begin its performance by delivering a tire shredder within seven working days of its receipt of the down payment. Shred Pax was obligated to deliver the pyrolysis system "eight to ten months after receipt of down payment." The contract also provided that "[a]pproval of installation [was] to be on site at P.R.S. International" at an address in Plymouth, Florida. PRS made the down payment on April 17, 1990. It eventually made all of the payments required under the contract, except the final payment of $39,296.25, by January 1991. Shred Pax had delivered all of the equipment, except the pyrolysis machine, to the Florida site prior to January 1991.

For reasons that are unclear, PRS moved its Florida operation to Illinois. It obtained a lease for a site in South Beloit, Illinois, in May 1991, and ceased its operations in Florida during the middle of 1991. Sometime thereafter, PRS began shredding tires, soliciting to buy tires, and preparing for delivery of the pyrolysis machine at the South Beloit site. According to Winfried Kaczmarek, the president of PRS in 1990 and 1991, Shred Pax's president, Al Kaczmarek, Winfried's brother, repeatedly assured PRS that the machine would be delivered by December 1991. In November 1991, three PRS representatives, including Winfried Kaczmarek, Pat Sreenan, and

Richard Goetz, went to Shred Pax's property in Wood Dale, Illinois, to check on the progress of the pyrolysis machine. They found only parts, but not an entire machine. Shred Pax claims that it had subcontracted for the construction of the machine, though PRS claims that Al Kaczmarek refused to say where the machine was being built. At that November 1991 meeting, the PRS representatives indicated to Shred Pax that they would like Shred Pax to find another buyer for the machine, and suggested that Shred Pax advertise to find a buyer.

In January 1992, Patrick Sreenan wrote to Shred Pax and inquired as to whether Shred Pax had advertised the PRS pyrolysis machine for sale, as the parties had discussed in their November 1991 meeting. Discussing the sale of the machine, Sreenan explained that "[y]ou can appreciate that I am very anxious to reduce my already considerable losses as it relates [sic] to this company ***." Within a week, Al Kaczmarek replied by letter on behalf of Shred Pax. He stated that Shred Pax was willing to ship the machine anywhere PRS desired. He also indicated that Shred Pax desired prompt payment of the remaining $39,296.25, which it claimed was due in February 1991. In a February 1992 letter, Sreenan stated that, under the terms of the contract, he believed that the final payment was not due until the pyrolysis machine was delivered. He stated that PRS could not afford to have a representative fly with Kaczmarek to see all of the parts of the machine because PRS was "broke and [had] considerable indebtedness." In conclusion, Sreenan said that PRS had been misinformed about the number of pyrolysis systems in operation when it ordered the system, and that it would like to be reimbursed "for all monies paid in connection with the pyrolysis system, less ten percent for any inconvenience we may have caused you by way of storage." In an April 24 letter, Sreenan stated that Al Kaczmarek had been told of the

move to Illinois in June 1990, and had never told PRS that a change in the eventual location of the machine would require alterations to the machine. The parties apparently continued to exchange correspondence through the remainder of 1992.

In a letter from Al Kaczmarek to Sreenan, dated January 5, 1993, Kaczmarek wrote that Shred Pax had delivered "all shredder items," that only the pyrolysis machine remained to be delivered, and that PRS had failed to make the final payment due under the contract. Kaczmarek also claimed that PRS owed Shred Pax for various storage costs and other unspecified "unpaid invoices." Sreenan responded by letter dated January 18 that the last payment was not due until delivery of the pyrolysis machine, that he was unaware of any unpaid invoices, and that there had been no agreement as to storage costs. Sreenan again stated his desire to find another buyer for the machine, because, he said, "it is my desire to be completely disassociated with anything to do with tire shredding and/or burning." Sreenan asked Kaczmarek to state the minimum amount he would pay for a mutual release from the contract. Sreenan suggested that Shred Pax pay $250,000. In a March 3 letter, Al Kaczmarek wrote to Sreenan, stating that: (1) the contract required delivery in Florida, and PRS had "broken that contract" by relocating to Illinois; (2) Shred Pax had incurred additional expenses related to the machine, had sought reimbursement from PRS, and PRS had not responded to those requests; (3) the pyrolysis machines were "sitting around and [could] not be finished in total because [Shred Pax did not] know in which state they will go, what water hook up it is and if there are cooling towers required as the information from Florida to Illinois was never answered." Kaczmarek "demanded" that PRS "put a payment in our hand and you take this pyrolysization system complete or incom-

plete." He expressed frustration with having to store the machine for a period of time, as well as with PRS's failure to specify a delivery site, its failure to make the final payment under the contract, and its failure to pay additional expenses incurred by Shred Pax. He stated that PRS had 30 days to pay what it owed to Shred Pax and take delivery.

The record also contains various submissions from the parties regarding the environmental requirements for a pyrolysis system. According to the affidavit of Richard Goetz, he and Sreenan obtained a permit from the City of South Beloit for the operation of a tire shredding and pyrolysis operation. According to the affidavit of Winfried Kaczmarek, PRS made "initial contact" with the Illinois Environmental Protection Agency and was told that the pyrolysis system would be tested for emissions after it was put into operation. The affidavit states that neither Shred Pax nor Al Kaczmarek ever requested a permit for the construction or installation of a pyrolysis system in South Beloit. It also states that Shred Pax never indicated that delivery and installation of the system could not or would not occur before government permits were obtained. Finally, it states that no permit is required for tire pyrolysis because it does not emit any toxic gases or pollutants. Shred Pax submitted the affidavit of John Yates, who identifies himself as a registered professional engineer experienced in the environmental field. In the affidavit, Yates states that the Illinois Administrative Code required PRS to obtain a construction permit from the Illinois Environmental Protection Agency before the pyrolysis system was installed. The interrogatories exchanged by the parties also refer to the environmental permits required for the construction and installation of a pyrolysis system. Plaintiff's response to defendant's first set of interrogatories states that, as of February 1991, PRS could legally take delivery of a py-

rolysis operation without any permits.

In August 1995, PRS filed the case at bar against Shred Pax, alleging a breach of contract based on Shred Pax's failure to deliver the pyrolysis machine. In the course of discovery in the case, on April 20, 1995, Shred Pax served on PRS a set of requests for admissions, pursuant to Supreme Court Rule 216. The requested admissions included the following:

"6. Shred Pax delivered to PRS the shredding system and other equipment required by the contract other than the pyrolysis system.

7. PRS accepted, approved, and used the shredding system and other equipment delivered by Shred Pax.

8. PRS failed to pay Shred Pax $898,200.

9. Prior to February, 1991, PRS ceased doing business at the Florida location referred to in Exhibit A-2 [the contract] attached hereto.

10. As of February, 1991, PRS did not possess all of the permits required by applicable federal, state, and municipal laws for delivery, installation, or operation of the pyrolysis system at any location in the United States.

11. As of February, 1991, PRS did not have a location in the United States with the permits required to take delivery of the pyrolysis system.

12. As of February, 1991, possession of the pyrolysis system was of no benefit to PRS.

13. PRS never obtained all of the permits required by applicable federal, state, and municipal law for delivery, installation, or operation of the pyrolysis system at any location in the United States.

14. PRS never had a location in the United States with the permits required to take delivery of the pyrolysis system.

15. After February, 1991, possession of the pyrolysis system was of no benefit to PRS.

16. PRS never requested in writing that Shred Pax deliver the pyrolysis system to PRS at a particular location on a particular date.

17. PRS never requested that Shred Pax deliver the pyrolysis system to PRS at a particular location on a particular date.

18. PRS refused to take delivery of the pyrolysis system.

19. PRS requested that Shred Pax sell the pyrolysis system to someone else.

20. Shred Pax had the pyrolysis system ready for delivery in February, 1991, and thereafter.

21. PRS repudiated the parties' contract by refusing to take delivery of the pyrolysis system or by requesting that Shred Pax sell the pyrolysis system to someone else.

22. PRS breached the parties' contract by (1) repudiating the parties' contract, by refusing to take delivery of the pyrolysis system or by requesting that Shred Pax sell the pyrolysis system to someone else, (2) by failing to pay Shred Pax $39,296.25 when due, or (3) failing to obtain all of the permits required by the applicable federal, state, and municipal law for delivery, installation, or operation of the pyrolysis system at any location in the United States."

PRS never responded to these requests for admissions. On February 20, 1996, Shred Pax filed a motion to deem certain facts admitted. In that motion, Shred Pax pointed out that PRS had been served with requests for admissions 10 months earlier and had neither replied nor objected, and that, under Supreme Court Rule 216(c), facts are deemed admitted if a party is served with a request to admit and fails to object or reply within 28 days. In a July 24, 1996, hearing, PRS offered no reason for its failure to respond to the requests to admit, though it attempted to tender responses to Shred Pax at the hearing. The trial court found no good cause for PRS's delay in responding to the requests for admission, and granted the motion to deem certain facts admitted.

On the basis of those admissions, as well as certain other evidence, Shred Pax moved for summary judgment on August 12, 1996. The other submissions consisted mainly of the correspondence between Sreenan and Al Kaczmarek, as well as the Yates affidavit. The trial court granted the motion for summary judgment. The appellate court reversed the award of summary judgment. 292 Ill. App. 3d 956. The appellate court held that a party's

failure to respond to a request for admission should not be deemed an admission if the request relates to "disputed ultimate facts," which are defined as "any contested facts needed to establish one's case or defense," or to "legal conclusions." 292 Ill. App. 3d at 963-64. In so holding, the appellate court recognized, but declined to follow, the contrary decision in *People v. Mindham*, 253 Ill. App. 3d 792 (1993), in which the court held that a failure to respond to a Rule 216 request constitutes an admission, even if the request relates to an ultimate fact. Instead, the appellate court in the case at bar held that such requests to admit ultimate facts or legal conclusions are beyond the intended scope of Rule 216, which the court held is intended to "obviate the difficulty involved regarding proof of evidence that is incontrovertible." 292 Ill. App. 3d at 964. The court found that Shred Pax's requests that PRS admit that it refused to take delivery (paragraph 18 of the request), and that it failed to obtain the necessary permits for the system (paragraphs 10, 11, 13, and 14), related to ultimate facts and thus were improper. In addition, the court found that the requests that PRS admit that it repudiated the contract (paragraph 21) and breached the contract (paragraph 22) related to "legal conclusions," and thus were also improper. The court did not find grounds for a summary judgment award in the other requested admissions, and accordingly reversed the trial court's judgment and remanded the cause for further proceedings. We granted defendant's petition for leave to appeal to this court. 166 Ill. 2d R. 315.

## ANALYSIS

In deciding this appeal, we are faced with two distinct issues. The first question concerns which, if any, of defendant's requests for admissions should be deemed admissions as a result of plaintiff's failure to respond or object to those requests. The resolution of this issue

depends on whether each request was proper under Rule 216. The second issue is whether, after setting aside any improper requests for admissions, the remaining admissions provide adequate support for the trial court's award of summary judgment for defendant. We review both questions *de novo,* because they are, respectively, a question of law (*In re Estate of Rennick,* 181 Ill. 2d 395, 404-05 (1998)) and an appeal of an order granting summary judgment (*Outboard Marine Corp. v. Liberty Mutual Insurance Co.,* 154 Ill. 2d 90, 102 (1992)). We begin by reviewing the propriety of the admissions requested by defendant.

Supreme Court Rule 216 states in relevant part:

"Rule 216. Admission of Fact or of Genuineness of Documents

(a) Request for Admission of Fact. A party may serve on any other party a written request for the admission by the latter of the truth of any specified relevant fact set forth in the request.
\*\*\*

(c) Admission in the Absence of Denial. Each of the matters of fact and the genuineness of each document of which admission is requested is admitted unless, within 28 days after service thereof, the party to whom the request is directed serves upon the party requesting the admission either (1) a sworn statement denying specifically the matters of which admission is requested or setting forth in detail the reasons why he cannot truthfully admit or deny those matters or (2) written objections on the ground that some or all of the requested admissions are privileged or irrelevant or that the request is otherwise improper in whole or in part. If written objections to a part of the request are made, the remainder of the request shall be answered within the period designated in the request. A denial shall fairly meet the substance of the requested admission. If good faith requires that a party deny only a part, or requires qualification, of a matter of which an admission is requested, he shall specify so much of it as is true and deny only the remainder. Any objection to a request or to

an answer shall be heard by the court upon prompt notice and motion of the party making the request.

\*\*\*

(e) Effect of Admission. Any admission made by a party pursuant to request under this rule is for the purpose of the pending action and any action commenced pursuant to the authority of section 13—217 of the Code of Civil Procedure [citation] only. It does not constitute an admission by him for any other purpose and may not be used against him in any other proceeding." 134 Ill. 2d R. 216.

The first issue before us relates to the effect of a party's failure to respond to a request to admit. Rule 216(c) states that any matter of fact of which admission is requested shall be deemed admitted unless denied within 28 days of service of the request. The appellate court in the case at bar held that this rule did not apply to "ultimate facts and conclusions of law." Specifically, the court held that the trial court should not have considered as admissions ultimate facts or conclusions of law contained in defendant's request to admit, to which plaintiff did not respond. The appellate court reasoned that the purpose of Rule 216 is to allow admissions to undisputed facts, and not to provide parties with a means of proving their entire case. Defendant claims that the appellate court's ruling is contrary to the language of Rule 216 and our prior decisions.

The principles by which we construe supreme court rules are well settled. As we recently stated:

"In interpreting a supreme court rule, we apply the same principles of construction that apply to a statute. [Citation.] Our goal is to ascertain and give effect to the intention of the drafters of the rule. [Citation.] The most reliable indicator of intent is the language used, which should be given its plain and ordinary meaning. [Citation.] Where the language is clear and unambiguous, we must apply the language used without further aids of construction. [Citation.]" *In re Estate of Rennick*, 181 Ill. 2d at 404-05.

In *Bright v. Dicke*, 166 Ill. 2d 204, 210 (1995), we stated, with regard to Rule 216, "[t]he rules of court we have

promulgated are not aspirational. They are not suggestions. They have the force of law, and the presumption must be that they will be obeyed and enforced as written." *Bright*, 166 Ill. 2d at 210. Rule 216 allows requests for the admission "of the truth of *any* specified *relevant fact* set forth in the request." (Emphasis added.) 134 Ill. 2d R. 216(a). The rule plainly allows requests for admission of any fact which is relevant, and ultimate facts fall within this broad category.

The language of Rule 216 is also clear with respect to the effects of failing to respond to a request for admission. The rule provides that "[e]ach of the matters of fact *** of which admission is requested is admitted unless, within 28 days after service thereof, the party to whom the request is directed" denies the matters of which admission is requested or objects on the ground "that some or all of the requested admissions are privileged or irrelevant or that the request is otherwise improper in whole or in part." 134 Ill. 2d R. 216(c). Therefore, when a fact is properly included in a request to admit, and the served party does not respond or object to the request, that fact is deemed admitted. Again, whether a fact is an "ultimate" fact is irrelevant for purposes of this rule. The key question is whether a requested admission deals with a question of *fact*. Accordingly, requests for legal conclusions are improper; however, requests for admissions of factual questions which might give rise to legal conclusions are not improper. For example, a party's conduct pursuant to a contract, including what actions that party did or did not take, would be a factual question properly included in a request to admit. However, whether that conduct amounts to a material breach is a legal rather than a factual question, and thus is not appropriate for a request to admit. In subsequent filings, the other party may refer to that party's conduct under the contract and *argue*

that it amounts to a breach, but the language of Rule 216 refers only to factual issues. Therefore, requests under Rule 216 must be limited to questions of fact.

PRS argues that this result is contrary to the purpose of Rule 216. PRS contends that the purpose of Rule 216 is limited to "obviat[ing] the difficulty involved regarding proof of evidence that is incontrovertible." 292 Ill. App. 3d at 964. We disagree. Although requests to admit are often classified as a discovery device and treated as such in practice (*Bright*, 166 Ill. 2d at 208), "the purpose of admissions is not to discover facts but rather to establish some of the material facts in a case without the necessity of formal proof at trial." Requests to admit are "a device by which 'to separate the wheat from the chaff' " and are "intended to circumscribe contested factual issues in the case so that issues which are disputed might be clearly and succinctly presented to the trier of facts." 23 Am. Jur. 2d § 314 (1983).

Allowing a request to admit ultimate facts is not contrary to these policies. A trial may include several "ultimate" factual issues. If certain of these ultimate facts are uncontested, then a request to admit may be used to remove them from the arena of disputed facts, thus "separating the wheat from the chaff" by narrowing the issues to be decided at trial. Moreover, at the time at which a party serves a request to admit on another party, it is not always clear whether a factual issue is an "ultimate" fact. *Mindham*, 253 Ill. App. 3d at 798-99. Therefore, a rule limiting requests to admit to nonultimate facts may be impractical.

Finally, we note that, in interpreting Rule 36 of the Federal Rules of Civil Procedure, the federal courts have reached the same conclusion: requests to admit ultimate facts are permissible, but requests to admit legal conclusions are impermissible. Rule 36 allows requests to admit "the truth of *any* matters within the scope of Rule 26(b)

*** that relate to statements or opinions of fact or of the application of law to fact ***." (Emphasis added.) Fed. R. Civ. P. 36. Based on the plain language of Rule 36, federal courts have unanimously held that a party may request another party to admit *any* fact, regardless of whether or not that fact can be characterized as "ultimate." See, *e.g.*, *Campbell v. Spectrum Automation Co.*, 601 F.2d 246, 253 (6th Cir. 1979); *Cereghino v. Boeing Co.*, 873 F. Supp. 398, 403 (D. Or. 1994); *City of Rome v. United States*, 450 F. Supp. 378, 383 (D.D.C. 1978); *Branch Banking & Trust Co. v. Deutz-Allis Corp.*, 120 F.R.D. 655, 658 (E.D.N.C. 1988); *In re Niswonger*, 116 B.R. 562, 566 (Bankr. S.D. Ohio 1990); *In re Adelman*, 90 B.R. 1012, 1015 (Bankr. D.S.D. 1988); *In re Sweeten*, 56 B.R. 675, 678 (Bankr. E.D. Pa. 1986); 7 Moore's Federal Practice par. 36.10[7] (3d ed. 1998). Indeed, these courts have held that a request to admit, to which the served party did not respond, may provide the sole grounds for an award of summary judgment for the requesting party. See *Donovan v. Carls Drug Co.*, 703 F.2d 650, 651 (2d Cir. 1983); *Cereghino*, 873 F. Supp. at 403; 7 Moore's Federal Practice par. 36.10[7] (3d ed. 1998). On the other hand, Rule 36 requests may not include requests for "opinions of law" or for legal conclusions. 7 Moore's Federal Practice par. 36.10[8] (3d ed. 1998); *Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co.*, 130 F.R.D. 92, 96 (N.D. Ind. 1990); *Williams v. Krieger*, 61 F.R.D. 142, 144 (S.D.N.Y. 1973); *English v. Cowell*, 117 F.R.D. 132, 135 (C.D. Ill. 1986); *Adelman*, 90 B.R. at 1015. The federal rule and Supreme Court Rule 216 were intended to serve the same purpose: to "establish[ ] certain facts as true, thus, narrowing the range of issues for trial." *Branch Banking & Trust Co.*, 120 F.R.D. at 657. See also 7 Moore's Federal Practice par. 36.10[7] (3d ed. 1998).

We also find support in the judgments of other state courts which have reached the same conclusion in

construing similar rules. See also, *e.g.*, *Diversified Communications, Inc. v. Godard,* 549 A.2d 362, 363 (Me. 1988) (construing a rule identical to Federal Rule 36); *Schmid v. Olsen,* 111 Wis. 2d 228, 236, 330 N.W.2d 547, 551 (Wis. 1983) (same); *Allied Gas & Chemical Co. v. Federated Mutual Insurance Co.,* 332 N.W.2d 877, 880 (Iowa 1983) (construing a rule nearly identical to Rule 36); *Morast v. Auble,* 164 Mont. 100, 104, 519 P.2d 157, 159 (1974) (construing a rule "practically identical to" a prior version of Rule 36); *Salazar v. Valle,* 360 So. 2d 132, 133 (Fla. App. 1978) (construing a rule nearly identical to Rule 36). Thus, we hold that, while requests to admit may not include legal conclusions, they may include questions of ultimate fact. Moreover, the failure to respond to a request to admit an ultimate fact constitutes an admission which may give rise to a grant of summary judgment. Accordingly, the appellate court was correct in holding that "conclusions of law" should not be contained in requests for admission, because the rule limits such requests to questions of fact. However, the appellate court was incorrect in holding that such requests should not include "ultimate facts."

The next question to be decided is whether, in light of our holding above, the requests to admit, to which PRS did not respond, included facts which properly support the trial court's award of summary judgment to Shred Pax. Specifically, we must determine (1) whether the requests at issue were properly construed by the circuit court as being deemed admitted when PRS did not deny them or object to the request, and (2) whether those properly deemed admissions can support the trial court's award of summary judgment. Shred Pax argues that the trial court's award of summary judgment was proper in light of PRS's failure to respond to its request that PRS admit that: (1) PRS ceased doing business at the Florida location prior to February 1991; (2) PRS

never obtained the necessary permits for delivery, installation, or operation of the pyrolysis system; (3) PRS never requested that Shred Pax deliver the pyrolysis system to PRS at a specified place and date; (4) PRS refused delivery of the pyrolysis system; (5) PRS requested that Shred Pax sell the pyrolysis system to someone else; (6) Shred Pax had the system ready for delivery in February 1991; (7) PRS repudiated the contract by refusing to take delivery of the pyrolysis system or by requesting Shred Pax to sell it to someone else; and (8) that PRS breached the parties' contract by repudiating the contract, refusing delivery of the system, requesting Shred Pax to sell it elsewhere, failing to pay Shred Pax $39,296 when due, or by failing to obtain all of the required permits for the delivery, installation, and operation of the system. It is undisputed that PRS did not deny or object to these requests within 28 days of their service. Therefore, under Rule 216, any matters which were proper subjects of requests for admissions are deemed admitted for purposes of this case. Thus, the questions we must answer are which, if any, of these requests are proper subjects of a request under Rule 216, and thus deemed admitted, and whether these admissions are sufficient to support the circuit court's award of summary judgment for Shred Pax. We will consider the propriety of each requested admission separately.

(1) "PRS failed to pay Shred Pax $898,200."

This is an admission which relates to a question of fact; specifically, it relates to the total amount which PRS paid Shred Pax, which is a factual, rather than a legal conclusion. Thus, PRS's failure to respond constitutes an admission.

(2) "Prior to February, 1991, PRS ceased doing business at the Florida location referred to in Exhibit A-2 attached hereto [the contract between PRS and Shred Pax]."

This is clearly a question of fact, dealing with the is-

sue of if and when PRS ceased operations at the Florida location specified in the contract. Thus, PRS's failure to respond to this request for an admission does constitute an admission.

(3) "As of February, 1991, PRS did not possess all of the permits required by applicable federal, state, and municipal laws for delivery, installation, or operation of the pyrolysis system at any location in the United States. *** As of February, 1991, PRS did not have a location in the United States with the permits required to take delivery of the pyrolysis system. *** PRS never obtained all of the permits required by applicable federal, state, and municipal law for delivery, installation, or operation of the pyrolysis system at any location in the United States. *** PRS never had a location in the United States with the permits required to take delivery of the pyrolysis system."

These are admissions relating to questions of fact. Thus, the failure to respond to each constitutes an admission of each.

(4) "As of February, 1991, possession of the pyrolysis system was of no benefit to PRS. *** After February, 1991, possession of the pyrolysis system was of no benefit to PRS."

This is also a question of fact, rather than a legal conclusion. PRS's failure to respond constitutes an admission.

(5) "PRS never requested in writing that Shred Pax deliver the pyrolysis system to PRS at a particular location on a particular date. *** PRS never requested that Shred Pax deliver the pyrolysis system to PRS at a particular location on a particular date. *** PRS refused to take delivery of the pyrolysis system. *** PRS requested that Shred Pax sell the pyrolysis system to someone else. *** Shred Pax had the pyrolysis system ready for delivery in February, 1991, and thereafter."

These are also questions of fact. The failure to respond to each constitutes an admission of each.

(6) "PRS repudiated the parties' contract by refusing to take delivery of the pyrolysis system or by requesting that Shred Pax sell the pyrolysis system to someone else."

This admission relates to a legal conclusion, rather than a factual question. Specifically, it relates to whether PRS's conduct amounts to repudiation of the contract. While the question of how PRS acted is one of fact, whether that conduct constitutes a repudiation of the contract is a legal conclusion. Thus, the request for an admission is inappropriate because it did not relate to a question of fact, and PRS's failure to respond or object does not constitute an admission.

(7) "PRS breached the parties' contract by (1) repudiating the parties' contract, by refusing to take delivery of the pyrolysis system or by requesting that Shred Pax sell the pyrolysis system to someone else, (2) by failing to pay Shred Pax $39,296.25 when due, or (3) failing to obtain all of the permits required by the applicable federal, state, and municipal law for delivery, installation, or operation of the pyrolysis system at any location in the United States."

This request also relates to a legal conclusion, rather than a factual question. The request relates to PRS's conduct under the contract and whether that conduct amounted to a breach of the contract. While the question of PRS's conduct is factual in nature, the question of whether that conduct constitutes a breach is a legal, rather than a factual question, and thus is inappropriate for a request for admission. PRS's failure to respond or object to this request does not constitute an admission.

The remaining question for us is whether PRS's constructive admissions provide sufficient grounds for an award of summary judgment in favor of Shred Pax. PRS has claimed that Shred Pax breached the parties' contract by failing to deliver the pyrolysis system as specified in

the contract. Shred Pax argues that it is entitled to summary judgment on a number of bases. We need only discuss one such argument.

Shred Pax argues that PRS, through its conduct, repudiated the contract, and that, as a result, Shred Pax had the right to suspend its own performance under the contract. PRS repudiated the contract, it is argued, by refusing to take delivery of the pyrolysis system; by ceasing to do business at the delivery location (in Florida) specified in the contract; by failing to request that Shred Pax deliver the pyrolysis system "at a particular location on a particular date"; and by requesting "that Shred Pax sell the pyrolysis system to someone else."

The contract between these parties was for the sale of goods, and thus is governed by the Uniform Commercial Code. See 810 ILCS 5/2—105 (West 1992). Under the Uniform Commercial Code, certain actions, if taken by a party to a contract, may constitute an anticipatory repudiation of the contract if those actions are sufficiently clear manifestations of an intent not to perform under that contract. See 810 ILCS 5/2—610 (West 1992); *In re Marriage of Olsen*, 124 Ill. 2d 19, 24 (1988). Where a party repudiates the contract, the remedies available to the other party include those enumerated in section 2—703, including withholding delivery of the goods for which the repudiating party has indicated it will not accept delivery. 810 ILCS 5/2—610, 2—703 (West 1992). Finally, a buyer's statement of intent not to accept delivery of goods constitutes an anticipatory repudiation. *Tenavision, Inc. v. Neuman*, 45 N.Y.2d 145, 150, 379 N.E.2d 1166, 1168, 408 N.Y.S.2d 36, 38 (1978); *Great Western Sugar Co. v. World's Finest Chocolate, Inc.*, 169 Ill. App. 3d 949, 957 (1988); 4 R. Anderson, Anderson on the Uniform Commercial Code § 2—610:63, at 547 (3d ed. 1997).

In the case at bar, PRS has constructively admitted,

through its failure to respond to the requests for admissions, that it indicated to Shred Pax that it would refuse to accept delivery of the pyrolysis system. In addition, PRS officers stated to Shred Pax that PRS would prefer that Shred Pax attempt to find another buyer for the pyrolysis machine, and that PRS's owners were attempting to become "completely disassociated with anything to do with tire shredding and/or burning." Thus, PRS repudiated the contract with Shred Pax. Under section 2—703, Shred Pax then had the right to withhold delivery of the goods for which PRS indicated that it would not accept delivery. Accordingly, PRS's claim that Shred Pax breached the contract by failing to deliver the pyrolysis machine must fail; the duty to deliver was excused by PRS's own repudiation of the contract, and PRS has no claim for breach of that contract. For this reason, Shred Pax is entitled to summary judgment.

Finally, we note that Shred Pax raises an additional argument. It argues that the appellate court's opinion in this case must be vacated as a result of this court's decision in *Cincinnati Insurance Co. v. Chapman*, 181 Ill. 2d 65 (1998), in which we struck down the Judicial Redistricting Act of 1997. The case at bar originated in the circuit court of Du Page County. Prior to the Judicial Redistricting Act, the appeal from the decision would have properly arisen in the Second District of the appellate court. However, because of the Act, the appeal proceeded to the Third District, which reversed the circuit court's judgment. Because we later invalidated the Judicial Redistricting Act, Shred Pax argues that the appellate court's decision should be vacated. We need not consider this constitutional argument, since it is not essential to the disposition of the case. See *In re Application of the County Collector*, 132 Ill. 2d 64, 73 (1989).

## CONCLUSION

For the reasons discussed above, the judgment of the

appellate court is reversed, and the judgment of the circuit court is affirmed.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*

JUSTICE HARRISON, specially concurring:

Although I agree with the result reached by the majority, I disagree with that portion of its analysis pertaining to requests for admissions which involve legal conclusions. There is no question that legal conclusions are not an appropriate subject for a request to admit under Rule 216(a). In my view, however, the claim that a requested admission improperly asks for a conclusion of law is no different from any other objection claiming that a requested admission is "improper in whole or in part." 134 Ill. 2d R. 216(c)(2). Under the express provisions of Rule 216(c), any such claim must be raised by written objection. Absent such an objection, the impropriety is deemed waived, and the failure to specifically deny the requested matter will constitute an admission of its truth.