OPINION OF THE COURT
Cooke, J.
By three agreements dated May 13, 1970, plaintiff agreed to lease 140 black and white and four color television sets to James Square Nursing Home, which was referred to in the contracts as a "trade name” for defendant Carl H. Neuman. Although the demised term was for 60 months, the lessee was given an option to purchase the equipment at the expiration of this period for one dollar per set. The agreements were never carried out and this action ensued with both sides claiming breach by the other and seeking damages.
In its complaint, plaintiff alleged four causes of action relating to the agreement. Special Term granted summary judgment to plaintiff on the first, wherein plaintiff sought the reasonable value of its services and for materials furnished to install a remote control wiring system for use of the television sets, and severed it from the other three causes of action. The second is for loss of profits under the agreements and the third and fourth are, respectively, for counsel fees and for recovery on a guarantee of the contracts by defendant Continued Care Facilities, Inc. Defendant Neuman counterclaimed for damages, alleging that plaintiff had breached the contracts.
At the trial without a jury, an officer and director of plaintiff testified that he made numerous telephone calls concerning delievery to the nursing home, which is located in Syracuse, New York, and that he was advised that the sets were not needed. Although the equipment was not shipped to the nursing home, plaintiff’s officer then wrote to an officer of defendant Continued Care Facilities, Inc., regarding the refusal to accept delivery. In the letter, an offer was made by plaintiff to cancel two of the contracts covering approximately 95 televisions, if the agreement calling for delivery of 35 sets was accepted. This offer was not accepted.
*149 A part of the dispute centered around a provision in the agreements which stated: "The Lessor [plaintiff] agrees not to file or cause to be filed a UCC-1 form covering the agreement.” At trial, defendant Neuman testified that, despite this assurance in the contracts, an officer of plaintiff told him that plaintiff could not deliver the television sets at all unless Neuman executed a number of UCC-1 forms which would then be filed as part of plantifFs financing of the arrangement. Plaintiff conceded that there had been a request for the documents for filing, but countered this assertion by attempting to show that although it wanted to finance the transaction, it would have had the ability to ship the goods even though its request was denied. Defendant further asserted that plaintiff failed to make a tender of any type in accordance with the contract, or as required under the Uniform Commercial Code.*
Based on the testimony and other evidence, the trial court found that plaintiff had tendered delivery, allowed recovery with respect to 35 of the sets, and dismissed the counterclaim. The Appellate Division unanimously reversed, on the law, concluding that plaintiff had failed to prove at trial that it was able to supply the goods without the secondary financing evidenced by the filing of UCC-1 forms. The court also charged plaintiff with breach of contract and remanded for a hearing to determine the extent of damages on defendant Neuman’s counterclaim.
There should be a reversal. Although it was conceded by plaintiff at trial that it requested UCC-1 forms from defendants, the mere asking for these statements would not constitute a repudiation of the agreements. This request was not complied with and thereafter plaintiff sought to make arrangements to deliver the televisions, but was advised that the ordered sets were no longer needed. An officer of plaintiff testified regarding his numerous offers to deliver the equip *150 ment, and it is notable that there was no showing that these offers were conditioned on the signing or filing of any of the forms. Significantly, this testimony was expressly credited by the trial court. Hence, in these circumstances, the Appellate Division erred in its emphasis on whether plantiff could prove that it was able to supply the goods. Regardless of how plaintiff desired to finance the transaction, it unequivocally sought to deliver the sets. Therefore, defendants were not at liberty to refuse the goods simply because requests to prepare these forms had been made and denied.
It is also held that under these circumstances plaintiff was not obligated to make a tender. While ordinarily a tender of the goods is required (see Uniform Commercial Code, §§ 2-301, 2-503), the repudiation of a contract by the buyer eliminates the need for further performance by the seller (see Uniform Commercial Code, § 2-610, subd [c]). Referred to as an anticipatory repudiation, a disavowal of the contract can be determined to have occurred whenever there is an "overt communication of intention” not to perform (see Official Comment 2 to Uniform Commercial Code, § 2-610). However, for these principles to operate, it should be shown that the announcement of an intention not to perform was positive and unequivocal (see White & Summers, Uniform Commercial Code, § 6-2, p 172).
In this case, the repudiation was more than amply demonstrated by the communication to plaintiff by an administrator and a purchasing agent of defendant nursing home that the sets were no longer needed and that delivery would not be accepted. This was shown by testimony, credited by the trial court and virtually unimpeached, of an officer of plaintiff who related that he made numerous telephone calls and forwarded at least one item of correspondence in this regard, but that he received negative answers and sometimes no response at all. In similar circumstances, involving pre-Uniform Commercial Code cases, it was held that a seller was relieved of the obligation to make a tender where the buyer stated that he would not receive or pay for the goods (Windmuller v Pope, 107 NY 674; see, also, Nichols v Scranton Steel Co., 137 NY 471, 485). The same result should obtain here. Therefore, in these circumstances, as a matter of law, defendants may not escape liability by asserting a failure to tender by the seller.
In conclusion, it is noted that the Appellate Division cor *151 rectly treated the three agreements under consideration as one contract. Accepting this approach would ordinarily suggest that the case be remitted to Supreme Court for assessment of damages on two of the agreements since that court allowed recovery as to only one of three "leases”. However, since plaintiff did not appeal to the Appellate Division from the trial court’s decision to limit damages to those suffered with respect to 35 of the 144 television sets, this court may not grant greater relief to plaintiff on this appeal (see Matter of Segall, 287 NY 52, 60-61; see, also, Cohen and Karger, Powers of the New York Court of Appeals, § 94, pp 404-405).
Accordingly, the order of the Appellate Division, insofar as it dismissed the complaint, should be reversed, the judgment of Supreme Court, New York County, should be reinstated, and the appeal from the order of the Appellate Division, insofar as it remanded for trial of the counterclaim on the issue of damages, although academic in light of this court’s decision, should be dismissed, upon the ground that the order in that respect does not finally determine the .action within the meaning of the Constitution, all with costs to plaintiff in all courts.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
Order insofar as it dismissed the complaint reversed, judgment of Supreme Court, New York County, reinstated, and the appeal from the order insofar as it remanded for trial of the counterclaim on the issue of damages dismissed, with costs to plaintiff in all courts.

It should be noted that although the agreements in question are styled "leases”, at trial plaintiff characterized them as "in essence a purchase agreement”. Defendants’ arguments also indicate that they viewed the transaction as a sale covered by article 2 of the Uniform Commercial Code. In any event, based on a reasonable view of the arrangement, in particular that the lessee was given the option to purchase the televisions for one dollar per set at the expiration of the agreement, it is appropriate to treat this dispute as governed by the sales of goods provisions of the Uniform Commercial Code (see Uniform Commercial Code, § 1-201, subd [37]; see, also, 1 Williston, Sales [4th ed], § 6-8, pp 177-179; White & Summers, Uniform Commercial Code, § 22-3, pp 759-765).