**SAFKA HOLDINGS LLC, Plaintiff,**

v.

**iPLAY, INC., Defendant.**

**No. 12 Civ. 7301(RJS).**

United States District Court,
S.D. New York.

Signed May 20, 2013.

Jennifer Huang, Lawrence Mentz, Thomas Guy Carulli, Kaplan, Massamillo & Andrews, L.L.C., New York, NY, for Plaintiff.

David Edward Leit, Lowenstein Sandler PC, Roseland, NJ, Amit Sondhi, Lowenstein Sandler PC, New York, NY, for Defendant.

## MEMORANDUM AND ORDER

RICHARD J. SULLIVAN, District Judge:

Safka Holdings LLC ("Plaintiff") brings this action alleging that iPlay, Inc. ("Defendant" or "iPlay") breached an agreement (the "License Agreement") whereby Defendant was to license the use of its trademarks to Plaintiff in exchange for payments of royalties and commissions. In its First Amended Complaint ("FAC"), Plaintiff asserts causes of action for (1) breach of contract, (2) repudiation and anticipatory breach of contract, and (3) breach of the covenant of good faith and fair dealing. Before the Court is Defendant's motion to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(c). For the reasons stated below, Defendant's

motion is granted in part and denied in part.

## I. BACKGROUND

### A. Facts

Plaintiff, a New York entity that manufactures and distributes clothing products, entered into the License Agreement with Defendant, a North Carolina corporation owning the iPlay trademarks, for the exclusive use of those trademarks in "certain channels of trade."[1] (FAC ¶¶ 5–8.) Three weeks later, Defendant sent Plaintiff a letter, dated June 22, 2012 (the "June 22 Letter"), which forms the nucleus of Plaintiff's allegation of repudiation by Defendant and states, in relevant part:

> As discussed, we ([Defendant]) have determined that we cannot proceed as originally contemplated. We need to mutually withdraw from the License Agreement dated June 1, 2012, and to do so prior to any substantial implementation of the agreement by either party. Thus, the significant Design and Approval Process contemplated has barely begun. [Defendant] has sole discretion and is not obligated to approve any material submitted.
>
> Accordingly, [Defendant] withdraws any license grants in the Agreement dated June 1, 2012 between [Defendant] and [Plaintiff] and considers the Agreement to be mutually terminated.

(FAC Ex. 2 ("June 22 Letter").) Plaintiff alleges that the June 22 Letter constituted a repudiation of the License Agreement and, insofar as it "threatened ... to thwart Plaintiff in its business," a breach of Defendant's duty of good faith and fair dealing. (*Id.* ¶¶ 12–13.)

### B. Procedural History

Plaintiff initiated this action by filing a complaint on September 28, 2012. (Doc. No. 1.) On February 1, 2013, Plaintiff filed the FAC, which added several factual allegations and abandoned various quasi-contractual causes of actions. (Doc. No. 8.) Defendant moved to dismiss the FAC on April 15, 2013 (Doc. No. 13), and the motion was fully briefed as of May 6, 2013 (Doc. No. 18).

## II. LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "provide the grounds upon which [the] claim rests." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007). Plaintiffs must also allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns,* 493 F.3d at 98. However, that tenet "is inapplicable to legal conclusions." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. Thus, a pleading that only offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. If the plaintiff "ha[s] not nudged [its] claims across the line from conceiva-

---

1. All facts are drawn from the FAC and the documents and exhibits attached thereto. In deciding the instant motion, the Court has also considered Defendant's Memorandum of Law ("Def. Mem."), Plaintiffs Opposition ("Pl. Opp'n"), Defendant's Reply ("Def. Reply").

ble to plausible, [its] complaint must be dismissed." *Id.* at 570, 127 S.Ct. 1955.

### III. DISCUSSION

#### A. Consideration of Materials External to the FAC

As an initial matter, Defendant seeks to introduce several documents in support of its motion to dismiss that are extrinsic to the pleadings. Specifically, Defendant's motion papers rely on an email from Plaintiff's president to Defendant's principal, dated July 2, 2012 (*see* Decl. of David Leit, dated Apr. 15, 2013, Doc. No. 15 ("Leit Decl."), Ex. B ("July 2 Email")), and a letter from Defendant's counsel to Plaintiffs counsel, dated July 25, 2013 (*see id.* Ex. D ("July 25 Letter")).

On a motion to dismiss, a court may consider "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco,* 622 F.3d at 111. Where a document is not incorporated by reference, however, the court may consider it only "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *Id.* (quoting *Mangiafico v. Blumenthal,* 471 F.3d 391, 398 (2d Cir.2006)). Otherwise, the court " 'must either exclude the additional material and decide the motion on the [pleading] alone or convert the motion to one for summary judgment under [Rule 56] and afford all parties the opportunity to present supporting material.' " *Kouakou v. Fideliscare N.Y.,* 920 F.Supp.2d 391, 396 (S.D.N.Y.2012) (quoting *Stephens v. Bayview Nursing & Rehabilitation Ctr.,* No. 07 Civ. 0596(JFB)(AKT), 2008 WL 728896, at *2 (E.D.N.Y. Mar. 17, 2008)).

In this case, the FAC neither references the July 2 Email or July 25 Letter nor relies on their terms and effect at all, let alone "heavily." The fact that those documents may be integral to the *outcome* of this case—which they may well be—does not mean that they are integral to Plaintiff's *pleadings.* Accordingly, insofar as the Court considers Defendant's motion under the standards of Rule 12(c), it cannot consider the July 2 Email or July 25 Letter.

As an alternative to consideration of the extrinsic materials under Rule 12(c), Defendant urges the Court to convert its motion to dismiss into a motion for summary judgment pursuant to Rule 56. However, although Rule 12(d) permits a court to reclassify a motion in this manner, *see* Fed.R.Civ.P. 12(d), the Court declines to do so here because Plaintiff has not yet had any opportunity to take discovery. *See Baldessarre v. Monroe–Woodbury Cent. Sch. Dist.,* 820 F.Supp.2d 490, 494 n. 2 (S.D.N.Y.2011) ("Summary judgment is inappropriate because the [p]arties have not conducted any discovery."); *see also Hellstrom v. U.S. Dep't of Veterans Affairs,* 201 F.3d 94, 97 (2d Cir.2000) ("Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discover.").

Accordingly, the Court will adjudicate Defendant's motion under Rule 12(c) and will consider neither the July 2 Email nor July 25 Letter. The Court now proceeds to the merits of Defendant's motion.

#### B. Breach of Contract Claims

Defendant seeks to dismiss the FAC's breach of contract claims on the grounds that it never repudiated, and thus never breached, the License Agreement or, alternatively, that it retracted its repudiation in a timely manner. Before the Court considers the merits of those arguments, however, it first must note that the FAC's two breach of contract claims are entirely du-

plicative of one another. They assert identical factual predicates—"Defendant's wrongful repudiation, withdrawal from and termination of the License Agreement"—and seek identical relief—"damages, Defendant's profits, increased damages, and reasonable attorney's fees and costs." (*Compare* FAC ¶ 20, *with id.* ¶ 22.) Accordingly, the Court, *sua sponte,* dismisses Plaintiff's breach of contract claim, which is labeled the "Sixth Cause of Action" in the FAC even though it is in fact only the third. *See, e.g., Sorrell v. Inc. Vill. of Lynbrook,* No. 10 Civ. 49(DRH)(GRB), 2012 WL 1999642, at *5 n. 4 (E.D.N.Y. June 4, 2012) (dismissing, *sua sponte,* duplicative claims); *4Kids Entm't, Inc. v. Upper Deck Co.,* 797 F.Supp.2d 236, 249 (S.D.N.Y.2011) (same). The Court will now turn to the remaining claim for repudiation and anticipatory breach of the License Agreement.

### 1. Repudiation

Under New York law, "a repudiation can be determined to have occurred only when it is shown that 'the announcement of an intention not to perform was positive and unequivocal.'" *DiFolco v. MSNBC Cable, LLC,* 622 F.3d 104, 112 (2d Cir.2010) (quoting *Tenavision, Inc. v. Neuman,* 45 N.Y.2d 145, 408 N.Y.S.2d 36, 379 N.E.2d 1166 (1978)); *accord Plastokit (Prod. 1986), Ltd. v. Am. Bio Medica Corp.,* 105 A.D.3d 1115, 962 N.Y.S.2d 796, 798 (2013) ("[A]n anticipatory repudiation must be an unqualified and clear refusal to perform." (internal quotation marks omitted)). Although generally "[t]he issue of repudiation or abandonment is an issue of fact ... [a]n exception applies where the repudiation is in writing, in which case the court may resolve the issue of repudiation as a matter of law." *DiFolco,* 622 F.3d at 112 (citations and internal quotation marks omitted).

This case turns on whether the June 22 Letter constituted a repudiation of the License Agreement by Defendant. Defendant maintains that the letter was not a positive and unequivocal statement of intent not to perform but rather a *request* for mutual termination. (Def. Mem. 7 (characterizing the June 22 Letter as simply expressing a "wish[ ] to '*mutually* withdraw from the License Agreement.'" (quoting the June 22 Letter)).) While it is true that the June 22 Letter hoped for mutual termination, it also expressed a clear unilateral intention not to fulfill Defendant's obligations under the License Agreement by stating that "[Defendant] withdraws any license grants in the Agreement dated June 1, 2012 between [Defendant] and [Plaintiff] and considers the Agreement to be ... terminated." (June 22 Letter.) This renunciation of Defendant's principal duty under the License Agreement was neither qualified nor equivocal, and so Defendant's argument that, "as a matter of law, the [June 22 Letter] cannot be construed to be a repudiation of the License Agreement" (Def. Mem. 7) must fail. *See Lucente v. Int'l Bus. Machs. Corp.,* 310 F.3d 243, 258 (2d Cir.2002) ("Anticipatory repudiation occurs when, before the time for performance has arisen, a party to a contract declares his intention not to fulfill a contractual duty.").

### 2. Retraction

In the alternative, Defendant argues that even if the June 22 Letter did repudiate the License Agreement, Defendant retracted that repudiation in its July 25 Letter. (Def. Mem. 8–9.) Obviously, this argument requires the Court to do precisely what it cannot: consider the July 25 Letter. Accordingly, whatever its ultimate merits, at this stage Defendant's argument must fail.

### 3. Damages

Defendant next asserts that Plaintiff is not entitled to any of the damages it seeks as a matter of law. Of the wide array of damages listed in the FAC, several can be dispensed with briefly because Plaintiff fails to plead the necessary elements. Plaintiff cannot obtain injunctive relief because it fails to plead the lack of an adequate remedy at law or irreparable harm, *see UBS Sec., LLC v. Voegeli*, 405 Fed.Appx. 550, 551 (2d Cir.2011); damages for unjust enrichment because it concedes that a valid contract governs this dispute, *see Orange Cnty. Choppers, Inc. v. Olaes Enters., Inc.*, 497 F.Supp.2d 541, 554 n. 18 (S.D.N.Y.2007) (citing *Clark–Fitzpatrick, Inc. v. L.I.R.R. Co.*, 70 N.Y.2d 382, 388, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987)); punitive damages because the FAC fails to allege any of the necessary elements for such relief, *see N.Y. Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 316, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995); or consequential damages—specifically, lost profits—because the FAC does not "plead that those damages were the natural and probable consequences of the breach, and were contemplated at the time the contract was executed,"[2] *see Atkins Nutritionals, Inc. v. Ernst & Young, LLP*, 301 A.D.2d 547, 754 N.Y.S.2d 320, 322 (2003) (citing *Kenford Co. v. Cnty. of Erie*, 73 N.Y.2d 312, 540 N.Y.S.2d 1, 537 N.E.2d 176 (1989)); *accord Yenrab, Inc. v. 794 Linden Realty,*

*LLC,* 68 A.D.3d 755, 892 N.Y.S.2d 105, 110 (2009) (striking claim for lost profits where Plaintiff "failed to plead that damages for business losses and cessation were within the contemplation of the parties at the time the contract was made").

Plaintiff is thus left to seek an award of the value of the license to use the iPlay trademarks provided for by the License Agreement. Where a breach of contract causes a plaintiff to lose an income-producing asset and that asset "has a determinable market value, a plaintiff may seek to recover that value whether the asset is 'tangible or intangible property or almost any kind of contract right.'" *Schonfeld v. Hilliard*, 218 F.3d 164, 177 (2d Cir.2000). The mere fact that an asset's price is not apparent, as it would be if the asset were traded on a standardized exchange, is not a barrier to relief. In cases of such "unique or intangible assets, New York courts have embraced the hypothetical market standard established by the Supreme Court," which looks to such factors as expert testimony, prior sales history, and evidence of sales of comparable assets to determine "the fair market value at which the property would change hands between a willing buyer and a willing seller." *Id.* at 178 (internal quotation marks omitted). Obviously, that value reflects, to a large extent, "a buyer's projections of what income he could derive from the asset in the future"—i.e., lost profits—

---

**2.** Although the allegations in the FAC are clearly inadequate to plead consequential damages, Plaintiff attempts to rescue that form of relief from dismissal by arguing that the License Agreement, which is attached as an exhibit to the FAC, "makes it clear that the parties contemplated the issue of lost profits and ... chose to limit the recovery of lost profits only where *a third party* made a claim for lost profits." (Pl. Opp'n 11.) The License Agreement indeed contains a provision limiting the liability of an "indemnifying party ... for any indirect, special, exemplary, conse-

quential or punitive damages, including amounts representing loss of profits." (License Agreement § 12.) However, the fact that the parties contemplated lost profits in the context of a breach vis-á-vis a third party sheds no light on whether they contemplated them as a "natural and probable consequence[]" of a breach of their obligations to *one another* under the License Agreement. *Atkins Nutritionals,* 754 N.Y.S.2d at 322. Without more, Plaintiff has failed to plead facts that could justify an award of consequential damages.

but it also factors in discounts for the time value of money and uncertainty. *Id.* at 176. In this case, where the license to use the iPlay trademarks represented the principal form of consideration furnished by Defendant under the License Agreement, there can be no question that the parties contemplated Defendant's liability for denying Plaintiff the very thing it had bargained for. *See id.* at 177. Thus, Plaintiff must have an opportunity to take discovery in order to determine the market value of the license to use Defendant's trademarks, and Defendant's motion to strike this form of relief must be denied.

### C. Breach of the Implied Covenant of Good Faith and Fair Dealing

■■■■■ Defendant also seeks the dismissal of Plaintiff's cause of action for breach of the implied covenant of good faith and fair dealing. New York law "recognizes an implied covenant of good faith and fair dealing in every contract." *Alter v. Bogoricin,* No. 97 Civ. 0662(MBM), 1997 WL 691332, at *7 (S.D.N.Y. Nov. 16, 1997); *accord Dalton v. Educ. Testing Serv.,* 87 N.Y.2d 384, 639 N.Y.S.2d 977, 663 N.E.2d 289 (1995) ("Implicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance." (citation omitted)). In general, the implied covenant prohibits parties to a contract from acting in a manner that "will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Granite Partners, L.P. v. Bear, Stearns & Co.,* 17 F.Supp.2d 275, 305 (S.D.N.Y.1998) (internal quotation marks omitted). Thus, "[w]here [a] contract contemplates the exercise of discretion," the implied covenant imposes a duty "not to act arbitrarily or irrationally in exercising that discretion." *Dalton,* 87 N.Y.2d at 389, 639 N.Y.S.2d 977, 663 N.E.2d 289. The implied covenant, however, "is not without limits, and no obligation can be implied that would be inconsistent with other terms of the contractual relationship." *Id.*

Here, the License Agreement required Plaintiff to obtain Defendant's approval for any materials bearing Defendant's trademarks and gives Defendant "sole discretion" over whether to grant or withhold such approval. (FAC Ex. 1 ("License Agreement") § 3.1.) The agreement also provided that Plaintiff "does not have any rights against [Defendant] for damages or other remedy by reason of [Defendant's] failure or refusal to grant any approval ... except to the exten[t] such failure or refusal is a result of fraud or willful misconduct of [Defendant]." (*Id.*) The June 22 Letter appears to reference these provisions by stating that Defendant "has sole discretion and is not obligated to approve any material submitted" to it by Plaintiff. (June 22 Letter.) Interpreting this statement as a "threat[ ] ... to thwart Plaintiff in its business," Plaintiff alleges that Defendant breached the implied covenant by threatening to abuse its discretion under the License Agreement and "arbitrarily ... withhold approval of any products produced by Plaintiff." (FAC ¶ 16.)

■■■■ Defendant disputes Plaintiff's interpretation of the June 22 Letter and asserts that the letter simply "reiterated the [License Agreement's] terms." (Def. Mem. 12.) But even if Plaintiff's reading of the June 22 Letter is correct. Plaintiff has failed to plead an actual breach of the implied covenant. Under the terms of both judicial precedents and the License Agreement, the implied covenant applies only when a party actually exercises discretion under a contract. *See Dalton,* 87 N.Y.2d at 389, 639 N.Y.S.2d 977, 663 N.E.2d 289 (applying the implied covenant to parties "exercising ... discretion"); (License Agreement § 3.1 (permitting Plaintiff to seek damages only where Defendant

actually fails or refuses to grant approval due to fraud or willful misconduct).) The FAC, however, never alleges that Defendant *actually* exercised its discretion arbitrarily or irrationally. (*See* Pl. Opp'n 9 (acknowledging that "Plaintiff had not submitted *any* samples for approval at the time" when Defendant sent the June 22 Letter).) Taking the allegations in the FAC as true, Defendant at most *threatened* to act in a manner that would have violated the implied covenant, and such a threat falls short of conduct necessary to constitute a breach. Accordingly, the Court must dismiss Plaintiff's cause of action for breach of the implied covenant.[3]

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the FAC is granted in part and denied in part. Specifically, the Court grants the motion to dismiss (1) Plaintiff's cause of action for breach of the implied covenant of good faith and fair dealing and (2) Plaintiff's prayer for injunctive relief, damages for unjust enrichment, punitive damages, and consequential damages. Furthermore, the Court dismisses Plaintiff's cause of action for breach of contract *sua sponte* as duplicative of its cause of action for repudiation and anticipatory breach. The Court, however, denies Defendant's motion to dismiss (1) the repudiation and anticipatory breach claim or (2) the prayer for damages equal to the value of the license to use Defendant's trademarks.

Accordingly, IT IS HEREBY ORDERED THAT by Friday, June 7, 2013, the parties shall jointly submit a proposed case management plan, a template for

which is available at http://wwwl.nysd.uscourts.gov/judge_info.php?id=99.

The Clerk of the Court is respectfully directed to terminate the motion pending at Doc. No. 13.

SO ORDERED.

---

**3.** To the extent Defendant's threat represented an expression of intent not to perform under the License Agreement, it is covered by Plaintiffs cause of action for repudiation and anticipatory breach. *See Harris v. Provident Life & Accident Ins. Co.,* 310 F.3d 73, 81 (2d Cir.2002) ("New York law ... does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled.").